BIGELOW *v.* SHEEHAN.

150    507
p156   433

1. APPEAL AND ERROR — RIGHT OF REVIEW — WAIVER — ACCEPT-
ANCE OF BENEFITS.
    Where, after a decree for specific performance has been ren-
    dered and complainants have paid the consideration into
    court, defendant stipulates that a portion of the considera-
    tion money paid in may be applied to satisfy a mortgage on
    the premises, his act amounts to a waiver of his right to
    a determination on appeal of the validity of the contract on
    which the decree was based.

2. EQUITY—CREDITORS' SUIT—LACHES—DILIGENCE—SUFFICIENCY.
    Where complainants were defeated in their attempt by cross-
    bill in foreclosure proceedings to subject defendant's interest
    in certain mortgaged lands to the payment of their execution,
    they acted with sufficient diligence where they filed their
    bill in aid of execution as soon as they learned from the opin-
    ion of this court in a subsequent case that, by a secret agree-
    ment between mortgagor and mortgagee, the mortgagor,
    their debtor, still had a substantial interest in the lands.

3. JUDGMENTS—RES JUDICATA—PERSONS CONCLUDED—CREDITORS.
    Where an assignee of a mortgagor was successful in his suit
    against the mortgagee to enforce a secret agreement between
    mortgagor and mortgagee providing for a sale of the lands
    and extension of the time for payment, the decree was not
    res judicata of the validity of the assignee's title as against
    creditors of the mortgagor not parties to the suit.

4. FRAUDULENT CONVEYANCES—MORTGAGES—SECRET AGREEMENT
BETWEEN MORTGAGOR AND MORTGAGEE — DEFRAUDING CRED-
ITORS.
    Though an agreement between a mortgagor and mortgagee
    providing for a sale of the lands and an extension of the time
    for payment is not per se fraudulent as to creditors, being
    presumptively for the benefit of the mortgagor's creditors as
    well as himself, the keeping of it a secret and the use of it for
    the purpose of defrauding creditors render it void ab initio
    and the original bona fides of the parties becomes imma-
    terial.

5. EQUITY—PLEADINGS—DEFECTS—DISREGARD—JUST DECREE.
    When all the parties and the subject-matter of the suit are

before a court of equity, and the proofs show that a decree can be entered doing exact justice to all, technicalities in pleadings are to be overlooked.

6. SAME—CREDITORS' BILL—SUSTAINING AS BILL BY ADMINISTRATOR.

A bill in aid of execution against assignees and the administrator of a deceased debtor, all interested parties being before the court, and complainant and the administrator so stipulating, may be regarded as a bill filed for the benefit of the administrator for the benefit of all creditors of the debtor, irrespective of whether by reason of the lapse of time the bill cannot be sustained on the theory upon which it was filed.

Cross-appeals from Wayne; Mandell, J. Submitted October 21, 1907. (Docket No. 96.) Decided December 30, 1907.

Creditor's bill and bill in aid of execution by Albert E. Bigelow and Charles A. Bigelow against Robert C. Sheehan, John L. Murphy, William H. White, James A. White, and Thomas White, copartners as William H. White & Company, and others. Defendants White filed an answer in the nature of a cross-bill for the specific performance of a contract with defendant Murphy. From a decree dismissing the bill and granting the prayer of the cross-bill, complainants and defendants Sheehan and Murphy appeal. Reversed, cross-bill dismissed, and decree entered for complainants.

*Gillett & Clark*, for complainants.

*Walker & Spalding*, for defendants Sheehan and Murphy.

*J. M. Harris*, for defendants White.

Two suits growing out of the transactions here involved have been decided by this court. (*Farwell* v. *Bigelow*, 112 Mich. 285; *Sheehan* v. *Farwell*, 135 Mich. 196.) A reference to them is necessary and will aid materially in understanding the issues in this case.

Cook had given Farwell a mortgage covering a large tract of land in Montmorency and Otsego counties, a piece of real estate in Detroit, and lands in Canada. Farwell filed his bill to foreclose this mortgage upon the lands in Michigan in the Wayne circuit court, in chancery, on August 1, 1894. The Bigelows, residents of Michigan, were judgment creditors and had levied upon the Michigan lands. They were therefore made parties to that foreclosure suit. Beside other defenses they there asked to have the assets marshaled and the Canadian lands first sold in payment of the mortgage debt. This relief was denied them, and a decree was entered fixing the amount due at $23,333. That decree was affirmed by this court in 112 Mich. 285.

While that suit was pending Cook and Farwell entered into an agreement which was the subject of the suit in *Sheehan* v. *Farwell*, 135 Mich., and found on page 198. By that agreement Farwell was to hold the lands for sale for two years, and "to sell them at best price obtainable, subject to the approval of Cook," etc. Farwell repudiated that contract, and Cook in June, 1898, commenced suit in a Canadian court to enforce it. Meanwhile Farwell had sold certain of the Canadian lands to his wife for $25,000. An accounting was had in the Canadian court, and the amount found to be due from Cook to Farwell in the Michigan suit was $9,308.16, and decree entered for the payment of that amount by Cook to Farwell. Sheehan was made an appointee by Mr. Cook to receive a conveyance of the lands from Farwell upon payment.

Murphy obtained from one Coffee, of Toronto, Canada, a loan of $12,000 for which Coffee took a mortgage as security executed by Sheehan to him (Coffee). Sheehan also gave Mr. Coffee four notes of $1,000 each, secured by a second mortgage upon the same lands, which notes were placed in the hands of Mr. Murphy. Subsequently Mr. Sheehan, on July 30, 1901, filed his bill in the circuit court for the county of Wayne to enforce the contract between Farwell and Cook, and established by the Canadian de-

cree, and for a conveyance of the lands to him. The facts in that case are fully stated in *Sheehan* v. *Farwell*, supra, and need not be repeated here. A decree was entered sustaining Mr. Sheehan's claim, and that decree affirmed in this court.

The Bigelows were not parties to the suit in the Canadian courts or to the suit in the Wayne circuit, and knew nothing of them until the opinion of this court was published in the Detroit Legal News in January, 1904. They thereupon promptly instituted this suit, filing the bill February 3, 1904. The bill is framed both as a creditor's bill and a bill in aid of execution.

Cook, Farwell, and Coffee are deceased, and their representatives are made parties defendant. Mr. Murphy, claiming to act by authority of Sheehan, made a contract with the defendants White for the sale of these lands to them at the price of $40,000. This contract was made by correspondence between Murphy and the Whites. The Whites paid $1,000 thereon which was received by Murphy. The Whites were made parties defendant and answered setting up their contract and filing a cross-bill, praying a specific performance thereof. Issues were duly joined by the proper pleadings, proofs taken in open court, and decree entered for the Whites decreeing a specific performance of their contract with Murphy and Sheehan, and dismissing the complainants' bill. After the decree was rendered the defendants White paid into court the sum of $47,485.47, the amount of the purchase price and interest thereon.

By consent of Murphy and Sheehan, the sum of $23,180.92 was withdrawn and paid to the proper representatives of the Coffee estate in satisfaction of the mortgage. The balance remains in the court to be disposed of as the court shall determine. Complainants appeal from the decree dismissing their bill, defendants Sheehan and Murphy appeal from the decree for specific performance of the contract.

GRANT, J. (*after stating the facts*).  1. The action of appellants Sheehan and Murphy in consenting to a withdrawal from the funds in the hands of the court of the amount due upon the Coffee mortgage and its application in payment and discharge thereof, renders a determination of the validity of the contract for the sale of the lands unnecessary.  This disposal of that portion of the fund was equivalent to a payment to them.  Their appropriation of it was an affirmance of the decree, a ratification of the contract, and a waiver of appeal. Neither law nor equity will permit a litigant to accept from his opponent the money which he denies his opponent owes him and then continue the litigation to an appellate court.

2. The remaining question involves the rights of complainants as creditors of Cook as against Sheehan and Murphy.  Without detailing the evidence we have arrived at the following facts:

(*a*) Complainants have been diligent in the pursuit of their remedy against their debtor Cook, and other parties claiming interests under him; by the action of the Canadian court and of Cook and Farwell the amount of the lien upon the Michigan lands was reduced to $9,308.16,— thus was accomplished one of the objects which these complainants sought in the mortgage foreclosure suit in 112 Mich. 285; they were financially unable to redeem from that decree; by a secret agreement between Farwell and Cook, Farwell's mortgage lien was continued, and Cook obtained the right to redeem upon payment of a little more than one-third of the decree.  Complainants acted promptly upon learning of this agreement through the publication of the opinion of this court.

(*b*) The Michigan lands were, at the time of the alleged conveyance from Cook to Sheehan by his appointment in the Canadian court to receive the title, worth about twice the amount of the Coffee mortgage; Sheehan, in the bill filed by him on June 30, 1901, to enforce that agreement, alleged under oath that the lands were worth at least

$33,000. Two years and a half afterwards Murphy, acting for himself and Sheehan, contracted to sell the timber lands for $40,000, which sale did not include the land in Detroit, worth between $3,000 and $6,000.

(c) Sheehan was a young man, married, a relative by marriage of defendant Murphy, a clerk with a small salary, without property or any financial responsibility. He was the mere puppet of Murphy, the controlling actor in the transactions, was completely under the control of Murphy, and acted whenever and wherever Murphy directed. He did not invest a dollar; the only money used in the deal was that obtained from Coffee by Murphy on the mortgage. In his bill, filed to compel the enforcement of that agreement by Farwell, Sheehan alleged that "Cook appointed him to pay the said moneys adjudged in said judgment [the judgment obtained in suit of *Cook* v. *Farwell*], and to take conveyance of the lands described therein from said Jesse H. Farwell." We find that Mr. Sheehan's testimony is unworthy of credit.

(d) Murphy invested no money, and was careful not to make himself in any way liable. It is evident that, under his representations, Coffee, the mortgagee, relied solely upon the value of the land in making the loan. Under Murphy's statement Cook had little if any other property, was sorely in need, and Murphy agreed with him that he should have half of the surplus—about $5,000— after Cook's debts to Farwell and to him (Murphy) were paid, and Sheehan was to have all that could be made over and above the mortgage. Murphy was employed by Cook to effect this loan from Coffee, and was to receive his compensation therefor from Cook. Murphy has acquired by assignment the interests of Cook's heirs.

(e) Cook continued to act until his death, June 19, 1902, as though the lands were his own. He supplied the information for drafting the bill to enforce the secret agreement. It was first drawn in his name, and then changed to Sheehan's. He employed and paid counsel,

and there is no evidence upon this record of any claim, aside from the assignment or appointment, that this conveyance to Sheehan was intended as an absolute one, until after Mr. Cook's death. We find that Sheehan, Murphy, and Cook understood that Sheehan was in fact acting as the trustee for Mr. Cook.

(*f*) Under the decree of the court below and consent of the parties, defendants Sheehan, Murphy, and the Coffee estate have received all the money that was obtained and used in the transaction.

(*g*) Complainants took out an execution which was returned unsatisfied December 23, 1893; an alias execution was issued December 9, 1893, and levy made upon the land in Detroit December 12, 1893; execution for Montmorency county was issued May 28, 1894, and levy made June 4, 1894.

(*h*) Mr. Sheehan was not a bona fide purchaser. It would be a stretch of credulity to believe that he, Cook, and Murphy understood that the appointment of Sheehan in the Canadian court to receive the title was intended as an absolute bona fide conveyance of lands worth then three times the amount which was then required to effect the redemption and revest the title in Cook. Sheehan, Cook, and Murphy were acting together to effect a common purpose. It is a fair inference that each understood what that purpose was. But whether Sheehan was fully acquainted with all the details becomes immaterial in view of the fact that he was the mere tool of Murphy, and that Murphy's knowledge was his knowledge.

Under these facts Sheehan and Murphy have no equities, they are all with the complainants. Sheehan lost nothing; Murphy not only lost nothing, but gained by securing the payment of certain debts due from Cook. The mortgagee's estate has been fully reimbursed. Creditors alone have been defrauded out of their honest dues. Can a court of equity grant relief? It certainly ought to do so, unless prevented by rules of law to which there is no exception.

150 MICH.—33.

The decree of the court in the case of *Sheehan* v. *Farwell*, supra, is not res judicata of the validity of the title of Sheehan as to Cook's creditors. Whether it is res judicata as against Cook's heirs and estate, is a question we are not called upon to decide. It is significant that defendants Sheehan and Murphy, after Cook's death, thought it necessary to amend their bill of complaint by alleging that "on the 4th of December, 1900, Cook, for a valuable consideration, transferred and conveyed all his interest in the lands to Sheehan." The rights of creditors were not involved in that suit. Complainants were not made parties to it, neither was the subject referred to in the briefs of counsel.

The agreement between Cook and Farwell providing for a sale and extension of the time of payment for two years was not per se fraudulent as to creditors. This agreement was not for the benefit of Cook alone, but for the benefit of his creditors who were entitled to the first consideration. Honesty should have directed him to inform complainants, his judgment creditors, of the transaction. Had he done this, complainants would long ago have been paid. Instead he used that agreement as a cover to conceal the situation from them, and when the property had advanced in value, as it soon and rapidly did, he then used that agreement and the arrangement with Murphy and Sheehan to prevent his creditors from obtaining their just dues. When Cook entered into this arrangement with Sheehan and Murphy to defraud his creditors, the whole transaction became void ab initio, and the original bona fides of that agreement is wholly immaterial, and furnishes no defense either to Cook or his assignees. Complainants believed, and had the right to believe, that that sale was bona fide, and that all of Cook's interest in the lands was gone. They had no occasion to move until they ascertained to the contrary.

Complainants base their right for relief upon two propositions, the first of which is that the lien they obtained by virtue of their levies is sufficient to support a bill in aid of

execution, and that they made their prima facie case in accordance with section 10203, 3 Comp. Laws. This position would be sound were it not for the provision of section 9233, 3 Comp. Laws, that such lien shall cease at the expiration of five years after the making of the levy, unless the land is sooner sold thereunder, or unless (a matter which is not referred to by counsel) the case should be held to fall within *Daniel* v. *Palmer*, 124 Mich. 335. Complainants reply to this by insisting that the fraudulent concealment of the facts by the defendants suspends the running of the statute. In the view we have taken of the second proposition, it becomes unnecessary to discuss this.

The second proposition is that if their first proposition is unsound, a decree should be entered in the name of the administrator for the benefit of the complainants and other creditors of Cook. Upon the hearing below a stipulation was filed between complainants' solicitors and the solicitors for the administrator that if the court should hold that—

"Complainants are not entitled to priority over the other creditors of Cook, and are not entitled to claim and enforce a lien, then that the bill filed should be considered as a bill filed by and for the benefit of the administrator of Cook's estate for the benefit of all the creditors."

When all the parties and the subject-matter of the suit are all before a court of equity, and the proofs show that a decree can be entered doing exact justice to all, technicalities in pleadings are to be overlooked. *Rynearson* v. *Turner*, 52 Mich. 7; *Ormsby* v. *Barr*, 22 Mich. 80; *Webster* v. *Peet*, 97 Mich. 326; *Van Voorhis* v. *Bond*, 110 Mich. 3.

There is no claim of any surprise or necessity of further testimony. The point was made in the administrator's answer that the remedy of complainants was "by and through this defendant as administrator of such estate to ascertain and recover the interest of said Cook, whatever it may be, in the property described in said bill." The answer further avers that if Sheehan is en-

titled to a conveyance of the lands it is by virtue of being agent or trustee of said Calvin A. Cook.

Under the facts detailed upon this record, it would be the duty of the administrator, there being creditors of Cook's estate, to file a bill to set aside Sheehan's conveyance for the benefit of the creditors. The litigation growing out of this controversy has been long and expensive. It is the duty of the court to avoid further litigation and expense, if it can be done with due regard to the rights of all. It is clear that this can be done. The rights of the creditors are paramount, and the rights of Sheehan and Murphy and Cook's heirs are subject to them. Defendant Murphy as assignee of the legatees of Cook's will will be entitled to receive whatever surplus remains after payment of the debts and expenses of administration.

Decree reversed, and decree entered in this court in accordance with this opinion, with the costs of both courts against Sheehan, Murphy, and the heirs of Cook.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.