BROWN *v.* KING.

1. AMENDMENT—PLEADING—EQUITY—CROSS-BILL.
   As an exercise of discretion, leave of the court to defendants to amend their answer and cross-bill so as to pray for affirmative relief, after the cause was at issue and one of the parties defendant had come to a settlement with complainant, was justified by the fact that the facts involved and the rights of the parties were complicated and the amendment was necessary to a full adjudication of their respective claims.

2. PARTIES—EQUITY.
   Two parties respectively claiming title and an adverse lien upon timber by conveyances from a third person who was not made a party to a suit to determine their respective rights by either complainant or defendant and cross-complainant, the objection that the grantor was a necessary party because he claimed an interest in the timber was properly overruled by the trial court on the theory that he was estopped by his conveyances to question the title of either claimant.

3. MORTGAGES—CHATTEL MORTGAGE—NOTICE OF PRIORITY.
   Filing a bill of sale of certain timber in the county clerk's office, and recording a deed of the same in the office of the register of deeds, was not constructive notice of the grantee's claim, where the instruments were both given as security for a debt and the deed was not entitled to record because it was attested by only one witness, and neither instrument was treated or filed as a mortgage, and where the grantor subsequently executed a chattel mortgage of the timber, to secure funds obtained to carry on lumbering operations.

Appeal from Roscommon; Sharpe, J. Submitted June 12, 1912. ( Docket No. 95.) Decided October 7, 1912.

Bill by Charles Brown against Oliver N. King and others for an injunction, accounting, and other relief. From a decree for defendants granting relief claimed in their amended cross-bill, complainant appeals. Affirmed.

*Floyd L. Post* and *William D. Gordon*, for complainant.

*John Quinn* and *C. W. Perry*, for defendants.

BIRD, J.   Defendant King and his assignor, the State Savings Bank of Harrison, made loans to one John Reed to enable him to continue certain lumbering operations which he had begun on lands in Roscommon county, and the bank took, as security for its loan, a chattel mortgage on certain logs which had been cut from said premises. Default in payment was made by Reed, and defendant King discharged his obligation as indorser and took an assignment of the security to himself.   Later, when he attempted to enforce his lien, complainant filed this bill to prevent him from so doing, claiming that he was not only the owner of the logs, but of the lands from which they were cut.   A hearing was had before the Honorable Nelson Sharpe, circuit judge, and a decree made.   His opinion therein is returned to us in the record, and it so nearly coincides with our conclusions that we have thought best to adopt it as our opinion in the case:

"On December 10, 1906, Frank Barton and John Reed executed and delivered to complainant a bill of sale of all the timber standing or being on certain lands, among which were the E. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ and S. W. $\frac{1}{4}$ of S. E. $\frac{1}{4}$ of section 8, and the N. E. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ and W. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of section 17, in town 22 N., R. 4 W., the same being in Roscommon county, and the same was filed in the city clerk's office at Midland on May 13, 1907.   That soon thereafter Reed purchased from Barton his interest in the firm's business, and on December 10, 1907, by quitclaim deed, he assumed to convey to complainant the above and other lands.   This deed was executed in the presence of but one witness.   It was recorded on December 13, 1907, in the office of the register of deeds of Roscommon county.

"Under an arrangement with complainant, Reed began cutting the timber on some of the lands described in these conveyances in 1907, and continued in 1908, when the logs were cut from the lands particularly described above. Brown made advances to Reed to carry on the lumbering

operations until the early part of 1908. The defendant King, a director in the defendant bank, had knowledge that the bank, of which Mr. Brown was an officer, in Midland, had declined to honor Reed's check, and at Reed's request took up the matter of a loan for him with the defendant bank. This resulted in the bank making loans to Reed on King's indorsement to the amount of $2,225. On June 20, 1908, Reed had the logs cut ready to be sawed and wanted a further loan, and at the bank's suggestion he executed a chattel mortgage on all the logs cut from the lands above described to the bank to secure the sum of $3,000. Further advances were made by the bank to Reed, on King's indorsement, however; the notes were renewed from time to time, and $800 was paid on the indebtedness by Reed. In February, 1909, Reed owed on these notes, secured by the chattel mortgage, $2,200. He then began shipping out the lumber in his own name, against the protest of King and the bank, and an injunction was issued out of the circuit court for Clare county on February 16, 1909, restraining him from doing so. This suit was begun by complainant on March 11, 1909, and by stipulation the case in Clare county was discontinued. Complainant was required to and did furnish a bond to compensate the defendants for any loss occasioned by the issuance of the injunction herein. The lumber was afterwards shipped and sold by Brown and the proceeds credited on Reed's account.

" The affirmative relief asked by the defendants is contained in their amended answer and cross-bill, which was filed, by leave of the court, a considerable time after the cause was at issue, and after Brown claims he had fully settled with Reed. Complainant objected to the filing of the same, and now further insists that these should not be considered. I believe it the wise exercise of judicial discretion to allow these amended pleadings to be filed, and have not changed my opinion in regard to it. The rights of the parties were much complicated; and it seemed the duty of the court, at any time before the hearing, to allow the pleadings to be put in such shape as would permit a full adjudication thereof.

" It is also insisted by complainant that Reed should have been made a party to these proceedings by defendants, and that his rights and those of the defendants and Brown cannot be determined without the same being done. There would seem no question but that the de-

fendants' right to these logs, as against Reed, is fully established, were there no claim made by complainant. The defendants were seeking to enforce their claim against Reed and this lumber when complainant interferes with their doing so by filing this bill and serving the injunction herein. It thus became the duty of complainant to show justification therefor. This he can only do by proving, by a preponderance of the evidence, that at that time he was entitled to the possession of the lumber in question. If Reed be a necessary party to the case, it would seem quite as much the duty of complainant as defendants to have had him made such.

"As before stated, it seems clear to me that, as against Reed, the claim of either party to a lien upon this timber is made out; any imperfection in the title of either could not be raised by him. The question is: What are their respective rights, each as against the other? Complainant insists that absolute title passed to him under his quit-claim deed. In view of the testimony of Reed, called by complainant as a witness, and the admission of the complainant himself, I shall not discuss these questions. The conveyance was clearly given to secure Mr. Brown for moneys owing by and advances to be made to Reed.

" Should these conveyances, antedating as they do the bank mortgage, take precedence? This depends on the fact as to whether or not the bank or King had actual notice, or are chargeable with constructive notice, of Brown's claim. On the question of actual notice, there is a sharp conflict in the testimony. Reed claims he told King and also Mr. Cave, cashier of the bank, of Brown's claim. Brown and Mr. Wismer, complainant's solicitor in this suit, testify that King admitted at one time when in Midland that he knew of Brown's claim when the mortgage to the bank was made. All of this testimony is flatly contradicted by King and Cave. The fact that Reed procured insurance on the lumber, making loss, if any, payable to the bank as mortgagees, is a strong circumstance tending to discredit him. He claims he also so advised the insurance agent, and yet admits the fact that the agent drove many miles to inspect this lumber. A policy so written would, of course, be void, and the transaction lead to grave doubt as to the truthfulness of Reed. The admissions claimed to have been made in Midland by King were at a considerable time after the bank had taken the mortgage. They are denied by King. If we apply

the doctrine of probabilities, does it seem reasonable that King would become liable as an indorser of Reed to the extent of $3,000 if he knew that the title to the product Reed was handling was in Brown? It also appears that King had personally advanced large sums to Reed. Knowing him to be a prudent business man, I cannot reconcile such conduct with the claim of complainant. Complainant certainly knew that some one was advancing money to Reed to manufacture this lumber. He seems to have been content to let them do so, believing his title thereto to be good. I can only say that, in my opinion, the claim of actual notice is not made out by a preponderance of the evidence.

"Were the defendants chargeable with constructive notice of Brown's claim? It does not appear that the complainant was seen by any of the defendants at or about the place where the logs were cut until after the chattel mortgage to the bank was given. The question then is, Was the filing of the bill of sale and the recording of the quitclaim deed constructive notice to defendants? Counsel for complainant concedes that no title passed to him under the bill of sale as against an innocent purchaser. Was the recording of the quitclaim deed constructive notice to defendants? The deed, having only one witness, was not entitled to record. I cannot conclude that the stipulation entered into on January 4, 1911, for the hearing of the case in the Gladwin circuit should be held to be a waiver of any objection which defendant might desire to make to the want of a sufficient record of this deed. It does not appear that defendant had any personal knowledge of the deed or the record. Mr. King testifies that he was advised by the register of deeds, over the telephone, that there were no conveyances from Reed recorded.

"The cases of *Gordon* v. *Hydraulic Co.*, 117 Mich. 621 [76 N. W. 142], and *Grand Rapids Nat. Bank* v. *Ford*, 143 Mich. 402 [107 N. W. 76, 114 Am. St. Rep. 668, 8 Am. & Eng. Ann. Cas. 102], seem, also, to clearly sustain the defendant's claim that the deed, having been intended to operate as a mortgage, should have been recorded as such, and, as it was not, it did not become constructive notice.

"The above considerations would seem to dispose of the questions herein involved. I am of the opinion that the claim of the bank was a bona fide one; that it passed to King by valid assignment; and that the lumber taken by

Brown, covered by the mortgage, was of a greater value than the amount due on the mortgage.

"The decree may contain a finding that there is due King, under the mortgage, $2,911.40, and interest from the date of the hearing; that the same was a lien upon the lumber which complainant prevented the defendants from asserting title to and reducing to their possession by reason of the issuance and service of the writ of injunction herein, and that complainant and the sureties on the bond filed herein are liable for the payment thereof."

The decree of the trial court will be affirmed, with costs of both courts to defendants.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred.