ANTOSZEWSKI *v.* CITY PLUMBING CO.

1. EQUITY—AMENDMENT—RESCISSION OF CONTRACT—DISCRETION TO PERMIT AMENDMENT.

It was within the discretion of the trial court upon the hearing to permit the amendment of complainant's bill so as to set up the alleged claim that defendant corporation had no property, or assets, in a suit to rescind a conveyance to the defendants on the ground of fraud, in the absence of any claim of surprise or request for continuance by the defendant.

2. SAME—PRAYER OF BILL—MULTIFARIOUSNESS.

A bill of complaint in equity is not necessarily multifarious because it contains an alternative prayer where it seeks for an injunction against a corporation to prohibit it from disposing of certain assets received from complainant and also to set aside a conveyance of the homestead by complainant and his wife to the defendant on the ground of fraud.

3. SAME—PARTIES—DECREE.

Where all the parties were before the court and the subject matter of the suit was properly presented by the pleading and a decree could be entered adjusting the entire controversy as to all the parties in interest, though

one defendant .who had a small interest suffered the bill to be taken as confessed against him and was not represented by counsel, appellant's claim that the decree could not apply with equal force to all the defendants was unwarranted.

4. SAME—PLEADING—HEARING—DEMURRER.

Where complainant amended his bill of complaint so as to meet the objections of defendants' counsel in part, and the trial court, without overruling the demurrer of defendants' counsel made orally to the proposed amendments, proceeded to dispose of the case on the proofs, and solicitors for the defendants raised the objection that the decree in the case had been prematurely entered because the demurrers had not been disposed of, and where the court thereafter treated the final decree as vacated, overruling the oral demurrer and restoring the decree as of a later date, giving counsel for defendants leave to file answers to the amended bill, no application being made to open up the case and take further testimony, and defendants admitting that they had no further proof, the decree entered was justified.

5. SAME—DECREE—RETURN OF CONSIDERATION—RESCISSION.

It was proper for the court to enter a decree, in a suit to set aside the transfer of property to the defendants on the ground of fraud, that complainants should be entitled to a reconveyance as to the wife of defendant, who had paid nothing towards the property received and who was not a real party in interest to the transaction. But the final order should be modified so as to require the return to defendant of a sum of money which had been received by the complainant for the property and to restore personal property in the form of shares of stock in a corporation formed pursuant to an arrangement made between the parties.

Appeal from Wayne; Hally, J.  Submitted January 20, 1915.  (Docket No. 17.)  Decided March 18, 1915.

Bill by Anton Antoszewski against the City Plumbing Company and others to cancel certain conveyances made to the defendants.  From a decree for complainant, defendants appeal.  Modified and affirmed.

*Arthur A. Koscinski* and *Harry J. Dingeman,* for complainant.

*Sloman & Sloman,* for defendants.

STONE, J.   In September, 1911, the complainant was, and had been for some time, engaged in the business of shoe repairing, and owned the premises involved in this suit, known as 1278 Rivard street, in the city of Detroit, which he, with his family, occupied as a homestead.   The property was incumbered by a mortgage of $1,200.   The homestead was all the property which complainant owned, and he claims that he was ignorant of business affairs and uneducated.   Having occasion to employ a plumber to do some work in his house, he called in the defendant Frank B. Kuczynski, a countryman of his, with whom he had no previous acquaintance.   The said defendant informed complainant that he was looking around with a view of buying some property.   A few days later, when the work was completed, said defendant called on the complainant and was informed that complainant would sell his homestead to him if he wanted to buy.   A price was stated, and then said defendant asked complainant what he thought of the idea of going into partnership with him in the plumbing business.

The complainant claims that he stated he was ignorant of such business, and that such a partnership would be impossible, to which the defendant replied that it could be made possible.   A few days later said defendant and his wife visited complainant's home, and further efforts were made to induce complainant to enter into the proposed partnership.   The said defendant told complainant that he would take the latter into partnership if the complainant would first pay him the sum of $1,500, which sum the defendant stated he needed at that time.   Complainant

replied that he had no money, and said defendant offered to take complainant's interest in the homestead in lieu of the $1,500 in cash, and complainant claims that he was induced by the said defendant to enter into the proposed partnership, and that, before the articles were drawn up, the complainant asked said defendant how much the latter was worth. Said defendant thereupon made out a statement of all his assets which he was to turn into the partnership to represent his three-fourths interest therein. In this statement said defendant represented that the property which he was turning over to the partnership was worth the sum of $5,535.32, less $300 for unpaid materials. Complainant claims that said defendant also agreed to take an inventory of his stock, and that he showed complainant the material he had at that time, and also took him out to a few places in the city and showed him work which he had started. Complainant, claiming that he was very ignorant of the value of such stock, inquired of said defendant whether what was shown him was worth nearly $6,000, and said defendant assured complainant that such was the fact, and that a close inventory would prove it to be worth even more.

On the 22d day of February, 1911, an agreement of copartnership was drawn and signed by the said parties. Under the firm name of Kuczynski & Antoszewski, the business to be carried on was that of plumbing in the city of Detroit, term to be one year, and such further period as the partners might agree upon. The capital of said firm was stated to be $5,500, of which sum defendant was to contribute three-fourths and complainant one-fourth in cash or property, and the partners were to share in the profits and losses in the same proportion. Among other things, the articles provided that each of said partners should be permitted to draw from the fund of

the firm a salary, said defendant to receive $4 a day for the first year, and complainant $2 a day, after which time both partners were to receive the same amount.

Said complainant and wife conveyed to said defendant and his wife the said homestead, and in return for this the said defendant executed a bill of sale of an undivided one-fourth of his assets to the complainant.

It is the claim of the complainant that the valuation placed on his homestead was $2,900; that complainant was to put into the business an interest in that property which would represent the sum of $1,500; the $1,200 mortgage to be assumed by the said defendant, and the difference of $200 was to be paid by said defendant to complainant in cash. Of this amount the complainant claims that he received $150 from said defendant. It is the further contention of the complainant that an understanding was had between him and the said defendant at that time, by which the complainant and his family were to occupy the second floor of the premises conveyed to said defendant and wife, as long as the complainant should stay in the business with said defendant, and that he was not to pay any rent for the period so stated. The complainant continued to live there, in pursuance of this understanding, without paying rent until some time after this suit was commenced, when unsuccessful attempts were made to eject complainant therefrom, and later said defendant threw complainant's household goods out of the house during complainant's absence.

Complainant claims that, notwithstanding repeated requests, he was never able to obtain an inventory from the said defendant as promised. It is the further claim of complainant that during the existence of the partnership the said defendant continually

urged the complainant to incorporate their business. This was finally agreed to. On December 12, 1911, articles of incorporation were drawn up with the said defendant and Josephine Kuczynski, his wife, and complainant, as corporators. All three subscribed the articles of incorporation, and the same were put in evidence. The name assumed by the corporation was "City Plumbing Company." It provided for a capital stock of $15,000, but that only $8,000 were subscribed; the shares being of the par value of $100. Article 7 of said articles reads as follows:

"The amount of said stock actually paid in at the date hereof is the sum of eight thousand ($8,000) dollars, of which amount two thousand six hundred and ten ($2,610) dollars has been paid in cash, and five thousand three hundred and ninety ($5,390) dollars has been paid in other property, an itemized description of which, with the valuation at which the item is taken, is as follows, viz.: Crooks, cast iron pipes and fittings now at shop, at 1278 Rivard street, $50; 400 feet of lead pipe, $80; 400 feet of soil pipe, $200; soil pipe fittings at 1278 Rivard street, $60; small pipe fittings, plumber's materials and plumbing tools, all in shop at 1278 Rivard street, $2,050; plumbing materials and tools in store at 1278 Rivard street, $850; one Buick car, runabout, model 1910, numbered 663, $1,055; credits for work done and money outstanding, secured and unsecured, belonging to Frank Kuczynski and Anthony Antoszewski, $1,045. Said outstanding accounts are owned by Frank Kuczynski and Anthony Antoszewski, doing business under the firm name of the City Plumbing Company, a copartnership to which the corporation succeeds."

The said three parties subscribed the articles of incorporation; and all three made oath that the property described in article 7, which was taken in payment of stock, was worth the sum of $5,390.

Complainant received 20 shares of stock for his one-fourth interest in the partnership. The said defendant, Frank B. Kuczynski, received 59 shares, and his

wife, Josephine Kuczynski, received one share. Soon after the articles were drawn up, a meeting of the stockholders was had, at which Josephine Kuczynski was made secretary and treasurer, and the complainant was made vice president, and the control of the financial end of the business was placed in the hands of said defendant, Frank B. Kuczynski, exclusively. A few weeks after the corporation was organized, two shares of the capital stock were sold, one to defendant Pieprzak and one to defendant Brakoniecki. At a meeting of the stockholders, held on February 12, 1912, the complainant and two last-named defendants insisted upon an inventory being taken of the assets of the corporation. Kuczynski opposed this move, but finally gave his consent, and two experienced plumbers were to take inventory of the assets of the corporation. It is the claim of complainant that next day, however, said defendant withdrew his consent after a quarrel and altercation with the stockholders. Complainant, becoming suspicious that the property, especially the $2,610 in cash, mentioned in the articles, had not been paid over to the corporation, employed two experienced men in the plumbing business to make a detailed inventory of the assets of the concern. It is claimed that the said defendant prevented such inventory, but that said parties were able to make a fair estimate, and found that not only the $2,610 were not paid in, but the entire stock was worth not to exceed $500.

On March 7, 1912, the original bill of complaint in this case was filed, setting up these grievances at great length, and praying, among other things, that an accounting be taken between the said Frank B. Kuczynski and the defendant the City Plumbing Company of all and singular the moneys and expenditures of the said City Plumbing Company, and of the amount received by the said defendant Frank B.

Kuczynski, for and on account of the said City Plumbing Company; that on such accounting the said defendant Frank B. Kuczynski be required to pay over to the said City Plumbing Company all money which he had wrongfully or otherwise converted to his own use of its property; and especially that he be further decreed to account for the sum of $2,610 aforesaid, and that a receiver be appointed to take charge of the company; and that if, in the judgment of the court, it was found impracticable to further carry on the business of said plumbing company as a corporation, with profit or success, then in that case that the said corporation be wound up by a sale of the business, good will, and property of said corporation, and the avails thereof, after paying all its lawful indebtedness, be distributed among the shareholders as their interests might appear.

The bill prayed for a very broad injunction. A preliminary injunction was finally issued restraining the officers of the corporation from disposing of the property belonging thereto, except in the usual and ordinary course of business.

A separate answer was filed by the City Plumbing Company, and a joint and several answer by the defendants Frank B. and Josephine Kuczynski and defendant Pieprzak; the bill having been taken as confessed as against defendant Chester Brakoniecki. These answers, in short, denied all fraud and dishonest conduct on the part of the defendants, and it may be said that they denied every material allegation of the bill of complaint. These answers denied that the complainant was entitled to any relief, and prayed the advantage of a demurrer to the bill of complaint.

Upon the issue framed in this manner, the case was brought to a hearing in the month of January, 1913. The complainant was examined at great length, as well as the said defendant Frank B. Kuczynski, who

was called by the complainant, and numerous other witnesses were examined.

Upon the hearing, and after testimony had been taken for a day or two, the complainant desired to amend the bill of complaint, and counsel for the defendants, referring to such motion of complainant, said:

"I want to make a motion that they file their amendment now, whatever amendment they are going to file. It does not occur to me that it is in the interest of justice in this case to allow these men to fish for what they will put in their amended bill in this case. We don't know at present just what they are going to put in their amended bill. They have asked to amend in one particular. It occurs to me, after reading the bill over again last night, that they will have to amend all their allegations in order to reach the remedy they desire here. We ought to know at some reasonable time in this case what we are going to defend, and what relief they are going to ask; what allegations they are going to set up.

"*The Court:* I don't think there is anything unreasonable in that request.

"*Complainant's Counsel:* We cannot sit down and do it right now. You said you anticipated this move.

"*Defendant's Counsel:* I anticipated that that was the relief that you would have to ask for eventually, if you asked for any; that you could not ask for the relief that you have asked for, under the law. * * *

"*The Court:* Isn't it possible—without couching it in the language of allegation, isn't it possible to say now what propositions you intend to cover by your amendment?

"*Complainant's Counsel:* I think so.

"*The Court:* I think you better do that. Then at the first opportunity prepare the amendment. There has one opportunity gone by now.

"*Complainant's Counsel:* This really comes by way of supplement rather than by way of amendment. We are prepared to show, by way of supplement, that since the filing of this bill of complaint the assets of the corporation have been depleted to such an extent, through the actions of Frank Kuczynski, that the re-

lief originally prayed for in the bill of complaint would avail us nothing, and for that reason we ask leave to amend the prayer of the bill, and ask that conveyance of the property by Antoszewski to Kuczynski be set aside. I think outside of that our bill is sufficiently full to warrant the court in granting that prayer for relief, if he finds that the facts are sustained. A question was raised here yesterday that we allege in our bill that the value of the premises was about $2,700. The testimony shows it was $2,900. If there is any question about that, I will ask leave to change that from $2,700 to $2,900.

"*The Court:* All right. You may proceed. * * *

"*Defendant's Counsel:* I desire to demur to the amendment. Of course, I want to take an objection to the amendment as granted, and I want to demur to the amendment, that there is no allegation in the present bill to sustain the new prayer that they now seek to inject into their supplemental bill.

"*The Court:* All right.

"*Defendant's Counsel:* And that the bill as presented now would make the matter multifarious.

"*The Court:* That is one of the grounds of your demurrer?

"*Defendant's Counsel:* Yes."

The examination of the witnesses proceeded with the pleadings standing in this condition—witnesses having been called by both parties—until the testimony finally closed, at which time defendants' counsel said:

"That is all we have to offer, your honor. I desire to make a motion. I filed a brief, your honor. * * * * I desire now to make a motion that this bill be dismissed for legal reasons. He does not set up in the bill that this man has ever made a petition to the board of directors to have his wrongs redressed, or to have this suit brought, nor has he testified to it in his testimony here."

Whereupon counsel proceeded with his argument, citing certain authorities. The record shows the following:

"(After the amendments Mr. Stowers states that he thinks the amended bill should be filed. The court

states that he believes the amended bill ought to be filed.  Mr. Stowers asks for five days to file an answer or demurrer.  The court says he does not think this is an unreasonable request.)"

The testimony here closed.

From the record we understand that the case was here submitted.  It appears that on January 29, 1913, what is termed an "Amended and Supplemental Bill of Complaint" was filed.  The stating portion of the bill varies only slightly from the original bill.  It does, however, contain an averment that, upon complainant discovering the fraud perpetrated upon him, he tendered back to the said plumbing company and said defendant Frank B. Kuczynski the said shares of stock and said sum of $150, and demanded his property back.  Testimony to this effect had already been given upon the hearing.  The prayer of this so-called amended and supplemental bill, in addition to the prayer of the original bill, contained the following:

"Or that the deed by which your orator conveyed to the said defendants Frank B. Kuczynski and Josephine Kuczynski, his wife, the said premises herein described and located at 1278 Rivard street, Detroit, Mich., be declared null and void, and the said conveyance set aside, and that the defendants Frank B. Kuczynski and Josephine Kuczynski may be required to reconvey the said premises to your orator, and that said defendants Frank B. Kuczynski and Josephine Kuczynski may be restrained by an injunction of this court from selling, assigning, disposing of, or in any manner incumbering said premises known as 1278 Rivard street, in the city of Detroit, Mich., until the further order of this court."

On February 3, 1913, the individual demurrer of Frank B. Kuczynski was filed, and on the same day the joint demurrer of the City Plumbing Company, Frank B. Kuczynski, and Josephine Kuczynski to the amended supplemental bill of complaint was filed.

185 Mich.—15.

The demurrers were alike in effect, and were substantially as follows:

(1) That the amended supplemental bill as it now stands is multifarious. (2) That the averments and prayers are incongruous one with the other. (3) That the court, in this case, can enter no decree that will apply with equal force to all the defendants. (4) That the amended or supplemental bill seeks a new relief not prayed for in the original bill, and states no new matter that has arisen since the original bill was filed.

With the record in this condition, the court, on the 26th day of May, 1913, filed a lengthy opinion reviewing the testimony in the case, and reaching the conclusion that the complainant was entitled to have the premises reconveyed to him, subject to the claim of defendant Kuczynski for certain repairs and improvements made upon the property. In the course of this opinion the court reviewed the history of the said Frank B. Kuczynski in a severe manner, finding that he had been guilty of fraud in his dealings with the complainant, among other things, saying:

"In the bill as originally filed the complainant asked that the defendant Frank Kuczynski be compelled to pay into the treasury of the corporation the cash which the articles of incorporation stated had been paid in. Subsequently he concluded this would bring him small relief, because of the worthless condition of the company's affairs, and has filed a supplemental or amended bill, and has prayed that the court restore to him his property on Rivard street, Detroit, Mich.

"Defendant asserts that four distinct issues arise out of the case: (1) Can the complainant maintain this case? (2) Is he entitled to file an amended or supplemental bill? (3) The amended or supplemental bill is objectionable for multifariousness. (4) The complainant, in failing to promptly rescind his contract, when he discovered what he terms fraud, does not come to a court of equity with clean hands.

"As to the proposition 1: The jurisdiction of a

chancery court in a matter of this nature is expressly conferred by section 9757, 3 Comp. Laws, and the cases cited which explain those sections.

"As to 2: The purpose of the complainants in the original bill does not differ from the purpose expressed and desired in the amended or supplemental bill. He desired to possess himself of the money taken from him, either in the shape of cash, property, or shares of stock made valuable by the cash behind them. The dispute between the complainant and the defendant Frank Kuczynski is fully presented by this proceeding, and there is and should be no good reason for denying such amendment or amendments as will permit and justify a full investigation into all of the facts surrounding this transaction and a prayer for such relief as the present situation makes practical.

"As to No. 3: As already pointed out, the purpose of the original and amended bill is the same. In framing these, of necessity there comes an alternative .proposition. That is, if the court should find that the defendant Frank Kuczynski has so conducted the business of the corporation that a payment into its treasury of $1,500 or the sum stated in the articles would not result in granting any practical relief to the complainant, it then decree the return to him by the defendant of the property which the defendant is now possessed of.

"The defendant's purpose, as expressed by his former bookkeeper, would be accomplished in this case, and no relief of any practical character would come to complainant, and, in my judgment, the proper measure of justice will not be accomplished, unless the defendant Frank. Kuczynski is deprived of some of his cunningly obtained property. This was a purpose of the original bill; it remains one of the amended instrument; and the objection of multifariousness is not well taken.

"As to 4: It is true that the complainant might have acted more promptly, but he was in the position of one who was hoping for the best, and his first attempts to accomplish something are the efforts rather of a misguided man than of one acting in bad faith. As the defendant has, in the estimation of the court, placed improvements on the property, which are worth not to exceed $500, this amount should be taken

into consideration, as should also the condition of the taxes and mortgage, complainant will have a decree with costs."

On November 8, 1913, the court made its final decree in the case, ordering that the conveyance from complainant to the said defendants be set aside and declared null and void, as against said complainant, his heirs and assigns; that complainant pay to the defendants $559.81, being the amount of improvements, taxes, and interest upon the mortgage laid out and expended by said defendants upon the said premises, for which amount said defendants were to have a lien upon the property; and that, upon the payment of the same by the complainant, defendants Frank B. Kuczynski and Josephine Kuczynski, his wife, do convey to the complainant the premises, describing them.

The case rested in this condition until the month of January, 1914, when new counsel for the defendants came into the case and moved the court to set aside the decree rendered for the following reasons, to wit:

(a) Because said decree was prematurely made. (b) Because no order was made or entered in the case disposing of the defendants' demurrer to the amended bill of complaint. (c) Because no issue under the amended bill of complaint had been framed for the hearing thereon. (d) Because no hearing was had on the new and antagonistic issue raised by the amended bill of complaint:

"This motion will be based upon the files, records, and proceedings of said cause in said court and upon the hearing of the case upon the original bill of complaint, answers thereto, and proofs taken in open court on the hearing thereon."

Thereupon, upon the hearing of said motion on February 13, 1914, the court made and entered the following order:

"The defendants' motion to set aside the decree heretofore rendered in this case as having been prematurely made and entered and for other reasons cited in said motion, having come on to be heard, and after hearing the arguments of the solicitors for the respective parties, and it appearing to the court from the files and records that the amended bill of complaint was filed on January 29, 1913, and the defendants' demurrer thereto was filed on February 3, 1913, after the testimony was closed and the cause submitted, and that no order was entered in said cause overruling said demurrer and granting the defendants leave to answer same according to the rules and practices of said court, and that said decree was prematurely entered, it is therefore ordered that the demurrer of said defendants to said amended bill, which the court has considered as a joint and several demurrer, be and is hereby overruled, and that said defendants respectively are granted leave on or before February 26, 1914, to file their several answers to said amended bill of complaint, adding thereto, if they desire, a demurrer clause therein, incorporating substantially the several grounds of demurrer incorporated in the demurrer heretofore mentioned, which is likewise overruled, and this court being satisfied as indicated in his opinion filed in said cause 'that the purpose of complainant in the original bill does not differ from the purpose expressed and desired in the amended or supplemental bill,' and that no other or further proof should be allowed to be taken or hearing had upon the amended bill, and that the requests of the defendants therefore be denied.

"It is further ordered that the decree heretofore entered in said cause on November 8, 1913, stand as and for the decree of this court as made and entered on February 28, 1914, in place of November 8, 1913, without further hearing, to all intents and purposes as if the same had been first entered on said February 28, 1914."

The defendants have appealed.

As we have already stated, the amended or supplemental bill in its averments, except in the particulars pointed out, was substantially the same as the original bill. It is urged by appellants that the court should

not have permitted the amendment to be made. We are of opinion that the action of the court in that regard was within its discretion. The matter of the amended bill did not seem to be any surprise to defendants' counsel, for we find one of them stating: "I anticipated that that was the relief that you would have to ask for eventually, if you asked for any." We think that, under the liberal rule of amendments in this State, the court did not abuse its discretion in that regard. *Brown* v. *King,* 172 Mich. 355 (137 N. W. 729) ; *City Bank & Trust Co.* v. *Hurd,* 179 Mich. 454 (146 N. W. 299). Many earlier cases might be cited.

We do not think that the bill of complaint, as amended, was multifarious. The fact that the prayer had been amended would not render it so. Often a bill may have a double aspect, and an alternative prayer. without being multifarious. Many of our cases might be cited upon this subject. *Wales* v. *Newbould,* 9 Mich. 45; *Cornwell Manfg. Co.* v. *Swift,* 89 Mich. 503, 519 (50 N. W. 1001) ; *Cleland* v. *Casgrain,* 92 Mich. 139-147 (52 N. W. 460) ; *Densmore* v. *Savage,* 110 Mich. 27 (67 N. W. 1103) ; *Eberle* v. *Heaton,* 124 Mich. 205 (82 N. W. 820).

We do not understand the claim that no decree could be made applying with equal force to all defendants. All of the defendants (except one who had a small interest, against whom the bill was taken as confessed) were before the court, represented by counsel. We agree with the trial court that the equities were with the complainant, and we see no legal objection to the decree which was entered upon the merits of the case.

As this court said in *Bigelow* v. *Sheehan,* 150 Mich. 507, at page 515 (114 N. W. 389), at page 392:

"When all the parties and the subject-matter of the suit are all before a court of equity, and the proofs

show that a decree can be entered doing exact justice to all, technicalities in pleadings are to be overlooked."

The court below seemed to agree with counsel for defendants that the decree had been prematurely entered, because the demurrers had not been disposed of. The decree was treated as vacated; the demurrers were then disposed of by the court, and we think rightfully, and the decree restored as of February 28, 1914. In order to perfect the record, the court gave counsel for defendants leave to file answers to the amended or supplemental bill of complaint on or before February 26, 1914. We understand that this was done to complete the record. The subject-matter of these answers had been substantially covered by the previous answers and demurrers in the case. The record does not show that any application was made to the court to open up the case for the purpose of taking more testimony, nor does the court's attention appear to have been called to any such claim, and we find no such claim in the record. On the contrary, we find counsel for defendants announcing at the close of the testimony:   "That is all we have to offer, your honor."

In pursuance of the order of the court, the defendants appear to have filed the answer of Frank B. Kuczynski to the amended bill of complaint on February 27, 1914, and the answer of the defendant the said Plumbing Company, and the answer of Josephine Kuczynski on March 24, 1914. While the proceedings in the case were somewhat irregular, and out of the usual course, a careful consideration of the record leads us to the conclusion that substantial justice was done by the decree entered in the case, with the one exception which we shall hereafter mention.

It is urged, among other things, that there was no evidence tending to show that the defendant Josephine Kuczynski was in any manner a party to the alleged

fraud, and that, she having taken title jointly with her husband, the court should not have set aside such conveyance as to her. It should be borne in mind that she was represented by counsel at all times during the hearing of the case and the taking of testimony. The transaction was really one between the complainant and her husband. There is no evidence that she put any money or property into these premises. Under the evidence in the case, we think the court was justified in the conclusion which it reached in that regard. We think, however, that the decree below should be modified by requiring the complainant to pay to the said defendant Frank B. Kuczynski the sum of $150 and the interest thereon, which complainant admits he received and has never returned. This amount should be added to the $559.81 specified in the decree; and we think the decree should also provide that the complainant shall assign and deliver or tender to the said Frank B. Kuczynski the certificate for the 20 shares of stock which he received for his partnership interest in the corporation.

With these modifications the decree of the circuit court will be affirmed. No costs awarded to either party in this court.

BROOKE, C. J., and McALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.