[Civ. No. 3727. Second Appellate District, Division One.—January 11, 1922.]

## FRANK FLOYD HILL et al., Respondents, v. JAMES GARVEY, Appellant.

[1] Rescission—Contract—Misrepresentation of Law—Exception.—Conceding that a bare misrepresentation of law is not ordinarily sufficient to entitle a party to rescind a contract or conveyance, the rule may fail in its application where the misrepresentation of law includes as part thereof a misrepresentation concerning a matter of fact closely connected therewith.

[2] Id.—Mistake of Law—When Ground for Rescission.—A mistake of law may be a sufficient ground for setting aside a contract where there is a misrepresentation of the law by one party, of which the others are aware at the time of contracting, but which they do not rectify.

[3] Id.—Procuring of Oil Lease—Misrepresentation as to Sinking of Wells—Right of Rescission.—The procuring of a lease of land for the purpose of obtaining oil therefrom upon the misrepresentation that the sinking of an oil well within three hundred feet of a well already started is illegal is a ground for rescission, where the misrepresentation was made with knowledge of its falsity and the lessee was ignorant thereof.

[4] Laches—Pleading and Evidence.—Laches is a defense and not a condition of relief, and if it does not appear on the face of the complaint it must be affirmatively pleaded and proven.

APPEAL from a judgment of the Superior Court of Orange County. R. Y. Williams, Judge. Affirmed.

The facts are stated in the opinion of the court.

Andrew J. Copp, Jr., for Appellant.

Head & Rutan for Respondents.

CONREY, P. J.—Action to enforce rescission of a lease of real property. On the eleventh day of June, 1919, the plaintiffs executed a lease in writing to the defendant of the said real property for the purpose of obtaining oil therefrom. In October, 1919, plaintiffs served upon the defendant a notice of rescission, and thereafter, on November 13, 1919, commenced this action, wherein they claim that the

lease was obtained from them by means of false and fraudulent representations made by the defendant, and believed and relied upon by the plaintiffs, whereby they were induced to execute the lease, and without which they would not have signed that instrument. The answer of the defendant contains denials of practically all of those parts of the complaint in which the alleged fraudulent acts of the defendant are stated.

It was alleged by the plaintiff, and by the court was found to be true, that on the eleventh day of June, 1919, the defendant came to the place of residence of the plaintiffs, near the property described in said lease, and made the statements and representations to which we hereafter shall refer; that said statements and representations were untrue; that the defendant then and there well knew that they were untrue; that the defendant made such statements and representations for the purpose of deceiving and misleading the plaintiffs and for the purpose of defrauding the plaintiffs; that the terms and provisions of the lease are unfair to the plaintiffs and unconscionable, and that the plaintiffs received no consideration whatever for the signing thereof. Judgment having been entered in favor of the plaintiffs, the defendant appeals therefrom.

Concerning the findings of fact covering the several alleged false representations, appellant contends that the evidence is insufficient to support those findings. He further contends, as to some of the representations made, that they were no more than expressions of opinion, upon which the plaintiffs were not entitled to rely and which, even if incorrect, could not be held to be fraudulent.

The land of the plaintiffs was a rectangular tract containing 5.3 acres. A similar tract of 5.3 acres known as the McIntire property lies immediately north of the Hill land. Adjoining these two tracts on the east is a 10.07 acre tract known in this record as the Margaret Von Wedelstaedt property. Prior to his negotiations with the plaintiffs, the defendant had obtained from McIntire and from Mrs. Margaret Von Wedelstaedt separate leases of their said lands. By the Von Wedelstaedt lease, the lessor was bound to commence drilling or operations for sinking a well on the leased premises within 100 days from May 24, 1919, which was the date of that lease. By the McIntire lease, dated June 9,

1919, it was required that the lessor commence drilling or operations for sinking a well upon the leased premises "within ninety days after oil is obtained in paying quantities on Lot 2, Block 5, Golden State Tract," which was the property described in the Von Wedelstaedt lease. The lease obtained by the defendant from the plaintiffs was dated June 11, 1919, and contained terms requiring that "within ninety days after oil is obtained in paying quantities on the north half of Lot 1, Block 6, of the Golden State Tract" (which was the McIntire land), the lessor "shall commence drilling or operations for sinking a well upon said premises, and failing so to do, then this lease shall become void upon written notice of the party of the first part to the party of the second part." The Hill lease contained, among other things, the following paragraph: "It is further agreed by the party of the first part (the lessors) that neither they, nor any others, shall be permitted to drill or operate for oil within the radius of three hundred feet of any of the boundary lines of said property hereinbefore described."

Among the facts found, and which include those challenged by appellant, are the following: "That the execution of said instrument by the plaintiffs was procured by the defendant by means of undue influence and by false and fraudulent statements and representations. That the plaintiff, Frank Floyd Hill, is a young farmer; that his wife is a young woman, and that plaintiffs are inexperienced in matters of business and in the making of oil leases, and unfamiliar with the drilling and development of land for oil and the leasing of land for oil. That defendant went to the home of the plaintiffs in the night-time on June 11, 1919, and requested and urged the plaintiffs to execute the said oil lease, and told the plaintiffs that he already had the land leased on two sides of their five acres of land, being the land hereinbefore described, and that he could procure a lease of the land on a third side of their said five acres; that the law of California prohibits the sinking of an oil well within three hundred (300) feet of one already started; that defendant had a company organized with ample funds and ready to commence immediate operations for the drilling of an oil well; that if plaintiffs did not execute said oil lease, defendant would immediately cause wells to be started in such position that it would be impossible for the plain-

tiffs to lease their said five acres for oil development purposes, and that defendant would drain the oil from their land by means of said wells which he would cause to be started; that the terms of said oil lease were the same as the terms of leases obtained by defendant on property adjoining that of the plaintiffs; that the terms of said oil lease were such that, if defendant forfeited either of the other two leases on adjoining property which he had obtained, the said oil lease which defendant desired plaintiffs to execute would be automatically canceled; that he would not give plaintiffs time to consider the matter or to seek advice regarding the execution of said oil lease, but that plaintiffs must execute the said lease at once, or forever lose the opportunity of leasing their land for oil development thereon. At said time plaintiffs requested that they be allowed until the next day to consider and investigate said matter, and that defendant refused to grant said request and stayed at the home of the plaintiffs from about 8 o'clock at night until about half-past 11 of the same night, urging and insisting that plaintiffs execute the said lease. That each and all of the aforesaid statements and representations made by the defendant to the plaintiffs were false and untrue, which said defendant then and there well knew; that the plaintiffs believed said statements, and thereby the plaintiffs were induced and caused to execute the said oil lease.'' The court also found ''that all the allegations and averments of the plaintiffs' complaint are true, and that all the denials and allegations of defendant's answer which are contrary to the allegations of said complaint are untrue.''

The complaint alleged that the defendant represented to the plaintiffs that the corporation which had been formed had leased all of the lands surrounding the property of the plaintiffs. At the trial the plaintiffs admitted that no such representation was made concerning the premises adjoining their land on the west and that the defendant did not represent that he had obtained a lease of the adjoining property on the south which belonged to Bismark Von Wedelstaedt. According to the testimony introduced by the plaintiffs, the defendant, at said interview of June 11, 1919, stated that on the next day before that date he had seen Bismark Von Wedelstaedt; that ''he wanted us to take a lease on that property yesterday. We did not want it

because we thought it was a little further over than our geologist thinks the oil lies, and we would rather have this, but we can get that lease at any time. With our leases on three sides of you, there will be no chance whatever of your getting any company to come in and drill on your own property. You have got to come in with us.'' There is other testimony to the effect that the defendant stated that there was a law which compelled anyone to stay away 300 feet from any well started by another company, and that he could put down enough wells around the property of the plaintiffs to keep them from drilling at all and they could not lease to anyone. The evidence, therefore, is sufficient to sustain the finding of the court as made with reference to leases on adjoining property and the representation that the law of the state prohibited the sinking of an oil well within 300 feet of one already started. The evidence is further sufficient to sustain the finding that the defendant stated that if plaintiffs did not execute said oil lease, defendant would immediately cause wells to be started in such positions that it would be impossible for the plaintiffs to lease said five acres for oil development purposes, and that defendant would drain the oil from their land by means of such wells as he would cause to be started. The statement that defendant could procure a lease of the Bismark Von Wedelstaedt property was not a mere statement of opinion. It included a statement to the effect that the owner of that property had offered to lease the same to the defendant; whereas, according to the evidence, the fact was that the defendant had applied to said owner for a lease and had failed to obtain favorable consideration of his proposition. This is a sufficient answer to the contention of counsel for appellant that the statement was a mere expression of opinion and that there is no evidence that the opinion was dishonestly expressed.

It it suggested by appellant that, assuming these representations to have been made, they could not be fraudulent in effect because the statement as made, concerning the laws of California, was nothing more than a misrepresentation of law made by one holding no fiduciary or confidential relation toward the party to whom it was made, and that it does not appear that the defendant had superior means of information or possessed knowledge of the law superior to that

of the plaintiffs. As covering the general rule that misrepresentations of law do not constitute actionable fraud, we are referred to *Champion* v. *Woods,* 79 Cal. 17 [12 Am. St. Rep. 126, 21 Pac. 534]; *McCarter* v. *Zeller,* 35 Cal. App. 593 [170 Pac. 636]; *Bacon* v. *Soule,* 19 Cal. App. 428 [126 Pac. 384]; *De Laval Dairy Supply Co.* v. *Steadman,* 6 Cal. App. 651 [92 Pac. 877].

[1] Conceding that a bare misrepresentation of law is not ordinarily sufficient to entitle a party to rescind a contract or conveyance, this rule may fail in its application where the misrepresentation of law includes as part thereof a misrepresentation concerning a matter of fact closely connected therewith. (*Carr* v. *Sacramento C. P. Co.,* 35 Cal. App. 439 [170 Pac. 446].) The land of the plaintiffs was a tract only 330 feet in width. According to evidence which the court found to be true, the defendant was representing that by reason of his ability to obtain the Bismark Von Wedelstaedt lease in addition to the two other leases which he had already obtained, and by reason of the law, as stated by him, he could and would prevent the plaintiffs from drilling for oil on their land if they did not lease it to him. Respondent contends that the false representation concerning the 300-foot law was a part of this misrepresentation of fact. We doubt the soundness of this argument. It is true that the misstatement of law and the false statement of fact were made at the same time and for the same purpose, but they were separable. Either one might be true and the other false. But there is another phase of this same matter that is controlling here. [2] A mistake of law may be a sufficient ground for setting aside a contract where there is "a misapprehension of the law by one party, of which the others are aware at the time of contracting, but which they do not rectify." (Civ. Code, sec. 1578, subd. 2.) [3] In the case at bar, according to the evidence, not only did this condition exist, but the defendant intentionally deceived the plaintiffs by representing the existence of a law which he knew did not exist, and knowingly took advantage of the misunderstanding which obviously existed in their minds after he had made that statement.

Counsel for appellant claims that there is no evidence that defendant represented that the company which defendant had formed was incorporated; and that in fact a com-

pany or association had been formed between the defendant and two others, for the purpose of conducting this proposed oil venture; that each of these three persons, had agreed to contribute the sum of $10,000, which, together with other resources of the defendant, were sufficient to enable them to carry out the drilling program provided by the three leases. But we think that there is evidence that the defendant represented that he was acting on behalf of a corporation. Frank Hill testified that the plaintiffs expressed a desire to take at least until the next day to . consider the matter of executing the proposed lease, but that the defendant refused to allow this time on the ground that he had a board of directors' meeting the next morning, when they were going to decide the location of this rig which they were going to put up. The same witness testified that the defendant said he had a company formed with plenty of capital back of him and that they had their lumber all bought and ready to ship at an instant's notice, and that they would begin operations within a week or ten days. This evidence, although contradicted by testimony on the part of the defendant, is sufficient to justify the findings of the court establishing that the "company" referred to by the defendant was a corporation and that he represented that said corporation had ample funds and was ready to commence immediate operations for the drilling of an oil well. The finding that these representations were untrue is supported by the evidence. The testimony of the defendant himself shows that there was no corporation and that his proposed organization had not been completed on the eleventh day of June. He found it hard to organize. "Up to August we had about half the money lined up." In August the defendant went to New York on other business and was absent about three months. There is evidence that in August the defendant was trying to sell these leases to another party. From this, and other evidence, the court was well warranted in determining that a representation had been made by the defendant that a company (whether corporation or not) had been formed with ample funds, had purchased all of its lumber, and was ready to commence immediate operations for the drilling of an oil well, and that this representation was not true.

Another misrepresentation discussed is that wherein the defendant stated that the terms of the lease that he was seeking to obtain from the plaintiffs, including a so-called "bonus" were the same as the terms of the leases he had previously secured on the Von Wedelstaedt and McIntire properties. On sufficient evidence, the court found that these statements were made as alleged. At the interview, on the night of June 11th, Mr. McIntire was present and the McIntire lease was there. They did not have the Von Wedelstaedt lease, or any copy thereof. The lease which the plaintiffs signed, like the McIntire lease, provided for the payment of the sum of $1,250—approximately $250 per acre—by the lessee to the lessors at or before the expiration of the time allowed for commencing drilling operations; but the Von Wedelstaedt lease provided for a similar payment at the rate of $500 per acre. It appears from this evidence, and the court so found, that the plaintiffs relied upon the assurance that this cash payment or bonus amounted to the same sum per acre in all of these three leases, and that, except for the reliance which the plaintiffs placed upon those assurances, they would not have executed the lease. It is argued that, since there was no confidential relationship existing between these parties, and since the opportunity to investigate the statements was available, the plaintiffs did not have the right to rely upon such statements without investigation and without verifying their truth, considering that the Von Wedelstaedts were at that time present at their home, within a half mile distance of the Hill residence. We think that the circumstances, to which we have alluded, are sufficient to have entitled the plaintiffs to rely upon the representations as made to them. "Where a representation is made of facts which are or may be assumed to be within the knowledge of the party making it, the knowledge of the receiving party concerning the real facts, which shall prevent his relying on and being misled by it, must be clearly and conclusively established by the evidence. The mere existence of opportunities for examination, or of sources of information, is not sufficient, even though by means of these opportunities and sources, in the absence of any representation at all, a constructive notice to the party would be inferred; the doctrine of constructive notice does not apply where there has been such a represen-

tation of fact.'' (*Teague* v. *Hall,* 171 Cal. 668, 670 [154 Pac. 851].)

[4] Invoking the rule that a person who seeks to avoid a contract for fraud will be deemed to have waived the fraud unless he rescinds promptly after discovery thereof, appellant here contends that the plaintiffs have been guilty of laches sufficient to block their right to relief in this action. In his testimony the plaintiff Frank Hill stated that on the next day after the lease had been signed he called up the office of an attorney at law and inquired whether there was a law preventing the putting of an oil well within 300 feet of one that had been commenced. The attorney replied that there was no such law, but further stated that the right to rescind the lease was a doubtful proposition. As to all of the other representations which have been found to be untrue, it appears that the plaintiffs proceeded to rescind very promptly after discovering the actual facts. The defense of laches was not pleaded herein, either by demurrer or answer. This particular ground of objection appears to be presented for the first time in the brief of counsel for appellant on this appeal. ''We might also add that laches is a defense, and not a condition of relief, and if it does not appear on the face of the complaint, must be affirmatively pleaded and proven by the defendants. (16 Cyc. 176.) In the present case there was neither pleading nor corresponding proof of any prejudice suffered by the defendants through the delay of the plaintiff in not commencing the action sooner after the discovery of the fraud.'' (*Victor Oil Co.* v. *Drum,* 184 Cal. 226 [193 Pac. 243, 250]; *Tracy* v. *Smith,* 175 Cal. 161, 165 [165 Pac. 535].)

We think there is no merit in the claim that the plaintiffs failed to restore, or offer to restore, to the defendant everything of value received from him, and that, therefore, the plaintiffs cannot maintain the action. The plaintiffs made diligent efforts to find the defendant in order to serve upon him written notice of rescission wherein they offered to return everything which they had received from him. Upon discovery that he was in New York, they obtained his address there and mailed their notice to that address. The notice of rescission appears to have been received by the defendant two and one-half hours after the filing of the

complaint in this action. The lease made by the plaintiffs purported to have been made in consideration of the agreements therein contained and the payment by the defendant of the sum of one dollar. This dollar was not paid at the time of the execution of the lease. Assuming that said dollar was paid, the testimony shows that it was the only thing in the way of money or property that ever passed to the plaintiffs in connection with the lease. But the evidence is not such as to have required the court to find that it was paid. Each of the plaintiffs testified that they personally did not receive it. Mrs. Hill admitted that on the next day after the lease was signed the defendant came and offered her the dollar. She did not wish to receive it and did not take it. Thereupon the defendant gave it to the little boy of the plaintiff. Concerning this, Mrs. Hill testified: "I did not feel called upon to refuse to let the boy take it."

It seems to us unnecessary to take up for discussion the finding of the court that the lease was "unfair to the plaintiffs and unconscionable" in sundry particulars stated in the finding. Even if fair in its terms, the plaintiffs are entitled to cancellation of the lease in accordance with the facts found and the conclusions which herein have been stated.

The judgment is affirmed.

Shaw, J., and James, J., concurred.