[Civ. No. 2702. Third Appellate District.—October 29, 1924.]

# CELIA MAY SIMMONS, Appellant, v. WALLACE A. BRIGGS et al., Respondents.

[1] CONTRACTS—MISTAKE OF LAW—ACTION TO SET ASIDE—PLEADING. In this action to set aside an agreement purporting to settle the property rights of plaintiff and one of the defendants, which agreement was entered into while they were husband and wife, also to set aside a deed of trust executed by her pursuant to said agreement and to compel a reconveyance to plaintiff of the property covered by said deed of trust, the facts pleaded in the complaint showed that plaintiff, at the time she executed the instruments in question, was acting under a misapprehension of the law relating to her property rights, of which her husband was then aware, and he not only failed to rectify the misapprehension, but, having himself created it by his own misconduct, he caused her to continue in her erroneous belief by further wrongful conduct on his part; and such facts constituted sufficient ground for setting aside said instruments.

[2] ID. — HUSBAND AND WIFE — CONFIDENTIAL RELATION — DIVORCE. — Under section 158 of the Civil Code, contracts between husband and wife are subject "to the general rules which control the actions of persons occupying confidential relations with each other, as defined by the title on trusts"; and this relation and the obligation arising from it are not destroyed by the mere fact that an action for divorce is pending between them; nor can the husband, by bringing an action for divorce against his wife, divest himself of the obligations which are imposed upon him by virtue of such relation.

[3] ID.—OVERREACHING BY HUSBAND—UNDUE INFLUENCE—INFERENCES. Where, under the agreement between plaintiff and her husband, the latter gave up nothing and agreed to do nothing which he was not already legally bound to do, while plaintiff surrendered all her interest in all property standing in the name of the husband, all dominion over her own separate property, except the right to dispose of it by will in the event of the prior death of her son, her right to alimony and counsel fees in the divorce action then contemplated by the husband, and her right to the custody of her son or to his companionship, except as he might elect to visit her during school vacations, whereas the husband retained the right

1. See 13 R. C. L. 1372.
2. See 9 Cal. Jur. 822.
3. See 13 R. C. L. 1366; 13 Cal. Jur. 865.

to do what he would with his own property, such overreaching on the part of the husband was sufficient to raise an inference of undue influence.

[4] ID.—RESCISSION—INTENT—PLEADING.—In such action, the allegation that "immediately after learning of her said rights in the premises she notified in writing that she elected to and did rescind and terminate said purported agreement and deed of trust and at the same time demanded of them that they reconvey to her said property and deliver to her the possession of same," while not as certain and clear as it might have been made, was sufficient, as it clearly showed that plaintiff intended to consider the contract at an end.

[5] ID. — RESCISSION — OFFER OF RESTORATION. — A party seeking to rescind must restore or offer to restore everything of value which he has received under the contract; but if he has received nothing under the contract, no offer of restoration is necessary.

[6] ID.—NECESSITY FOR ACCOUNTING—OFFER OF RESTORATION.—Where the contract between plaintiff and her husband required the latter to pay certain street assessments, but it does not appear whether he paid the assessments or whether he was under legal obligation to pay the same prior to the execution of the agreement, and an accounting is necessary to ascertain the amount, if any, to which the husband is entitled on account of such payment, an offer of restoration thereof was not required to make plaintiff's rescission effective.

[7] ID.—INABILITY TO MAKE RESTORATION—ESTOPPEL.—The complaint having shown that defendant, by his wrongful conduct, had deprived plaintiff of the power to make restoration of the moneys expended by defendant for street improvements, he cannot be heard to object that she has not done so.

[8] ID.—STATUTE OF LIMITATIONS—DISCOVERY OF FRAUD—PLEADING.— In an action to set aside a contract on the ground of fraud and mistake, in order to avoid the bar of the statute of limitations, it is necessary for the complaint to show when the fraud or mistake was discovered, why it was not discovered sooner, and the circumstances under which it was discovered; and the courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been actually defrauded on the ground that he did not discover the fact that he had been cheated

---

4. Rescission of contracts, how, by whom, and when made, notes, 50 **Am. Dec.** 672; 74 **Am. Dec.** 657. See, also, 6 **R. C. L.** 932; 6 **Cal. Jur.** 386.

5. See 6 **R. C. L.** 936; 6 **Cal. Jur.** 387.

6. See 6 **R. C. L.** 941.

8. Limitation on right to rescind fraudulent contract, note, 1 **Ann. Cas.** 910. See, also, 6 **R. C. L.** 935.

as soon as he might have done. It is only where the party defrauded should plainly have discovered the fraud, except for his own inexcusable inattention, that he will be charged with a discovery in advance of actual knowledge on his part.

[9] ID.—DELAY IN INSTITUTING SUIT—PREJUDICE—LACHES.—Plaintiff having given prompt notice of rescission upon discovery of the fraud and mistake, although the suit was not instituted until nearly two years thereafter, and there being nothing in the complaint to indicate that the defendants suffered any prejudice by reason of the delay, the complaint was not barred by laches.

[10] ID. — MINOR AS BENEFICIARY — SUBSEQUENT MAJORITY — GIFT THROUGH FRAUD.—One of the beneficiaries under the contract and deed of trust, a son of the parties, having been a minor at the time of the execution thereof, but he having been over twenty-five years of age at the time of filing of the amended complaint in the action to set aside said instruments, he stood in no different position than would any other defendant who had innocently received a gift of property procured through the fraud of a third person.   (Opinion on denial of rehearing.)

[11] ID. — FRAUD BY THIRD PERSON — INNOCENCE OF BENEFICIARY AS DEFENSE.—An innocent recipient of a gift procured through the fraud of a third person cannot set up his innocence as a defense to an action by the donor to rescind the gift on account of the fraud.   (Opinion on denial of rehearing.)

[12] PLEADING—DEMURRER—ADMISSIONS.—A demurrer admits the allegations of the complaint and must be decided upon the assumption that such allegations are absolutely true.   (Opinion on denial of rehearing.)

---

(1) 13 C. J., p. 380, sec. 269.   (2) 30 C. J., p. 1060, sec. 838.
(3) 30 C. J., p. 1060, sec. 838.   (4) 13 C. J., p. 618, sec. 676.   (5) 13
C. J., p. 619, sec. 678, p. 623, sec. 681.   (6) 30 C. J., p. 1070, sec.
856.   (7) 30 C. J., p. 1070, sec. 856.   (8) 37 C. J., p. 943, sec. 309,
p. 236, sec. 751.   (9) 21 C. J., pp. 221, 223, sec. 219.   (10) 31 C. J.,
p. 1024, sec. 78.   (11) 13 C. J., p. 610, sec. 650.   (12) 31 Cyc., p. 333.

APPEAL from a judgment of the Superior Court of Sacramento County.   George H. Thompson, Judge.   Reversed.

The facts are stated in the opinion of the court.

O. F. Meldon for Appellant.

White, Miller, Needham & Harber for Respondents.

---

10.   See 12 R. C. L. 953.
12.   See 21 Cal. Jur. 96.

FINCH, P. J.—The defendants' demurrer to the plaintiff's fourth amended complaint was sustained without leave to amend and judgment was entered in favor of defendants for costs. This appeal is from the judgment. The facts herein stated are taken from the allegations of the second cause of action stated in the complaint.

"On and prior to the 8th day of August, 1910, plaintiff and defendant Dwight H. Miller were husband and wife. . . . The defendant Gustavus S. Miller is the son of plaintiff and said defendant Dwight H. Miller and the issue of their marriage and was born on the 12th day of April, 1896." The plaintiff was the owner of the real and personal property described in the agreement and in the deed of trust, which were made a part of the complaint and are hereinafter referred to, the same being the separate property of the plaintiff and "substantially all the property that plaintiff owned or was possessed of." Defendant Dwight H. Miller did not have, and knew that he did not have, any interest in or claim to any part of said property or the right to manage or control the same.

"That on said 8th day of August, 1910, and prior thereto, the said Dwight H. Miller was desirous of obtaining dominion over, and the management, control and ownership of, plaintiff's said property; that in furtherance of his said desire and aim in this regard, the said defendant, Dwight H. Miller, persistently importuned plaintiff that deeds to the said real property be executed in such manner that he, the said Dwight H. Miller, might appear of record as sole or part owner thereof; that upon plaintiff's refusal to accede to said importunities, the said defendant resorted to threats, and repeatedly threatened plaintiff, that he, as her husband, would and could take upon himself the management and control of her said property; that he said to plaintiff that he, the said Dwight H. Miller, 'would put plaintiff where she could not enjoy anything,' meaning and intending thereby, as plaintiff since learned, that he, the said defendant, would have plaintiff declared an incompetent person, and placed under restraint and deprived of her liberty, and thereupon have himself appointed guardian of the estate and property of plaintiff, thereby securing to himself the management and control and financial benefits

of said property and estate, to the exclusion of plaintiff; that said Dwight H. Miller also claimed that by reason of their said marriage he became invested with some ownership and claim in and to said property and some rights of management thereof; that in pursuance to said threat, the said defendant did on or about the 19th day of May, 1909, file in the Superior Court of the State of California in and for the County of Sacramento, a petition wherein he did charge and represent that plaintiff was an incompetent person and was unable to manage or control her property, and wherein he prayed that he be appointed guardian of her estate and property; that said defendant, Dwight H. Miller, without any right or authority to do so, but in furtherance of his purpose to secure control of said separate property of plaintiff, also caused to be made and recorded a declaration of homestead, executed by himself alone, upon certain of plaintiff's separate real property.

"That by and through said acts and conduct aforesaid said defendant Dwight H. Miller, endeavored fraudulently to convey to plaintiff the belief that he had a substantial and important and legal claim of ownership in and to the said real property and to all the said property separately owned by plaintiff, and by and through said fraudulent acts and conduct plaintiff was thereby deceived and was led to believe and did believe that by reason of their said marriage the said Dwight H. Miller became thereby possessed of a substantial, important and legal claim, interest and ownership in and to all of said property; that at said time plaintiff was ignorant of the property rights respectively of husband and wife, and did not know, nor for many years thereafter did she know, that the said Dwight H. Miller had no legal claim of any kind to her said property; that said Dwight H. Miller and said attorney so employed by her father at said times knew that plaintiff was ignorant of the laws of the State of California as well as all other laws respecting the property rights of husband and wife, and that during all the other times in this complaint mentioned, they knew plaintiff was ignorant of said laws, and knew that plaintiff in her said ignorance relied upon their knowledge and information respecting the same; that during all of said times herein mentioned, the said Dwight H. Miller, in order to keep plaintiff in such ignorance and in order to deceive plaintiff

respecting said rights, repeatedly told and informed plaintiff that he had by reason of their said marriage an important and substantial claim, ownership and control in, over and to all of her said separate property; and that in every act and conduct, as well as in their conversation, he continued to deceive and did deceive plaintiff into the belief that he thereby possessed some claim and ownership in and to said property; that some time prior to the said 8th day of August, 1910, said Dwight H. Miller, by his unkind acts and conduct and extreme cruelty, compelled plaintiff to leave their said home which was a portion of the separate property then owned by plaintiff, and to reside with her father and mother; that the said Dwight H. Miller thereupon resorted to different means by which to deceive and to continue to deceive plaintiff and by which to keep her ignorant as to her actual rights respecting said property; that he thereupon employed attorneys to impress plaintiff with the belief, and to keep her impressed with the belief that he had some claim, ownership and interest in and to her said property by reason of their said marriage, and that said attorneys so employed by said defendant, did by intimations and innuendoes and otherwise continued to impress plaintiff with the belief that she had parted with some estate and interest in and to said property by reason of her said marriage; that on said 8th day of August and for some time prior thereto, the said Dwight H. Miller was contemplating the commencement of an action for divorce against plaintiff, and that thereafter, and on or about the 11th day of August, 1910, he did commence an action in the Superior Court of the State of California in and for the County of Sacramento, praying for a divorce from her; that plaintiff is informed and believes, and upon information and belief alleges, that at said time, and for some time prior to said 8th day of August, 1910, said Dwight H. Miller had planned and intended to divorce plaintiff so that he could marry another woman whom he then knew, and that he deliberately so acted and conducted himself toward plaintiff as aforesaid with the intent thereby fraudulently to obtain a part of her said property and with the intent thereby fraudulently to induce her to convey the same to him, and that failing in that respect he thereupon endeavored to impress plaintiff with said erroneous beliefs in order that she

would nevertheless be deprived of the full benefits of said property to her own use; that prior to the commencement of said action for divorce, and after the institution of said guardianship proceedings the father of plaintiff, G. L. Simmons (now deceased), consulted with and employed an attorney at law to inquire into and advise with plaintiff's said father relative to plaintiff's relations with said Dwight H. Miller and the aforesaid proceedings instituted by him in said Superior Court; that plaintiff has since been informed and believes, and upon information and belief alleges, that said attorney so employed by her father was a close intimate friend of said Dwight H. Miller and his said attorneys; that various conferences and interviews were had by and between the said attorney so employed by plaintiff's father, and said Dwight H. Miller and his said attorneys; that as a result of said interviews and conferences an agreement purporting to settle and adjust all property rights between plaintiff and said Dwight H. Miller was proposed and prepared by the said attorney for Dwight H. Miller, and was prepared by them at the instance of said Dwight H. Miller, purposely and with the intent to continue the said deception of plaintiff in regard to her said property rights, and that the said attorney so employed by plaintiff's father did not at any time inform plaintiff of her rights in respect to her said property or that the said Dwight H. Miller had no interest or claim therein, but on the contrary the said attorney permitted plaintiff to continue to believe said erroneous and mistaken belief, and permitted her to believe that the only way she could protect her own rights in her said property was to sign and execute said agreement and said deed of trust; that in connection with said fraud and as a part thereof, said Dwight H. Miller and his said attorneys sought to, and thereby did, frighten, force and coerce plaintiff at said time into believing said false representations on the part of her said husband, by threatening to institute further proceedings to have her declared mentally incompetent, by which proceedings plaintiff would be harassed by anxiety and held up in public mortification; that in order further to impress said erroneous belief upon plaintiff said Dwight H. Miller caused his said attorneys and the said attorney so employed by her father, to let plaintiff continue in her belief that her said husband

has some estate and interest in and to her said property, and that they by innuendo and intimation and their silence did so impress plaintiff with said belief, and that by innuendo and intimation they further made plaintiff believe that until she did sign and execute said agreement and deed of trust the said Dwight H. Miller would be in a position to interfere with her rights and control in and over said property; that said attorney so employed by her father told her just before she signed and executed said agreement and said deed of trust, to-wit: 'There is no telling what they might do after your father's death,' meaning thereby that there was no telling what the said Dwight H. Miller and his attorneys would do to plaintiff and to her property after her father was dead; that her father at said time was about seventy-eight years of age, was ill much of the time, and died only a short time after she signed said documents; that at no time was any mention made to plaintiff about any testamentary rights in favor of defendant Gustavus S. Miller, nor until said time of signing said deed of trust was the name of said Gustavus S. Miller mentioned in connection with said documents or concerning said matters; that during most of the times herein mentioned as aforesaid plaintiff was at the home of her said parents helping to care for her father who was ill most of the time; that under said circumstances she was compelled to rely upon the statements and representations of the said Dwight H. Miller and the said attorneys and others; that her father was unable to advise her at said time; that relying upon said statements and representations of her said husband, Dwight H. Miller, and the belief that by virtue of his relationship to her as her husband, he did have some right or interest in, and some power of control and dominion over, plaintiff and her said property, and believing because of same that it was necessary for her to enter into some kind of an agreement with him concerning said property in order to make a final settlement of his purported interest therein, plaintiff did sign and execute the said proposed agreement which purported to settle and adjust the property rights between her and her said husband, and also signed and executed, for the same reasons, the said proposed so-called deed of trust.

''That plaintiff therefore mistakenly and erroneously believed that her marriage with said defendant conferred upon

him some estate and interest in, and right of dominion over,
her said property, and that it was necessary for her to sign
and execute said agreement and deed of trust in order to
end his estate, interest and right therein and in order to
settle and adjust property rights between them concerning
said property and at said time plaintiff believed that by
the execution and signing of said agreement and deed of
trust on the part of said Dwight H. Miller that he, the said
Dwight H. Miller, was conveying, giving up and releasing
an interest, estate and claim therein; that if plaintiff had
known the said laws of the State of California, and had she
been advised and informed of her rights in and to her said
property she would never have signed and executed either
said agreement or said deed of trust; that plaintiff relied
upon said beliefs caused by said acts, conduct, representa-
tions and failure of said husband and the said attorney
so employed by her father to inform her fully as to her
rights, and that she did not discover until the fall of 1918
when there was a general and popular discussion relative
to the laws of California bearing upon the property rights
and interests therein of married persons what her rights
were at the time of the execution of said agreement and
deed of trust.

"Plaintiff further alleges that by reason of the execution
of said so-called deed of trust, she has been without pecu-
niary means wherewith to secure information and advice as
to her rights at the time of said execution of said agreement
and deed of trust, or her rights to legal relief on account of
mistake or otherwise as aforesaid, or to employ counsel and
defray the necessary costs and expenses of prosecuting to
a finish the necessary action to obtain such relief; that plain-
tiff received no consideration of any kind whatsoever for
her execution of said agreement or of said deed of trust;
but that the terms of said deed of trust then and thereby
stripped plaintiff of all her property, and that therefore,
by reason of her execution of said deed of trust, she ever
since, to the time of the commencement of this action, has
been without pecuniary means wherewith to employ counsel
as aforesaid and to obtain said information and advice as
to her said rights and the said pretended rights and claims
of said Dwight H. Miller; that at the time of the execution
of said agreement and said deed of trust, the said Dwight

H. Miller was already preparing to divorce plaintiff, and knew that he would shortly divorce her; that plaintiff is informed and believes, and upon information and belief alleges that said defendant Wallace A. Briggs and Henry G. May, the trustees mentioned in said deed of trust, likewise knew that said Dwight H. Miller intended immediately to institute said divorce action upon her signing said agreement and said deed of trust, and likewise knew that said Dwight H. Miller had no estate, interest or claim of any kind in and to said property, but that neither of said trustees informed or advised plaintiff of her rights therein; that thereafter the said Henry G. May resigned as said trustee, and defendant A. G. Folger was made trustee in his place; that during all the time since plaintiff executed said deed of trust, she was, and has been, thereby reduced to the position of a dependent, and, as such, subjected to the will and direction of said trustees, and by them restricted in the enjoyment of her property barely to so much of the income thereof necessary to her bare maintenance and support; that by reason of said dependency and subjection plaintiff was also hindered and delayed in obtaining the information that enabled her to discover her said mistake as aforesaid; that plaintiff was also hindered and delayed and thereby unable to discover said mistake and to learn her rights herein by reason of an accident on or about the 11th day of April, 1917, at which time, while she was undergoing medical treatment she was seriously burned by X-ray, which accident caused her great physical and mental suffering and loss of sleep for many months thereafter, causing her great expense, disabling her right arm, and from which injury she is still not fully recovered; that the expense thereof she has been compelled to pay from the limited and stinted income granted her by the defendant trustees herein; that she was thereby unable to meet the expense of employing counsel as aforesaid and to meet the necessary expenses as aforesaid or to carry said action to a finish and to obtain advice as to her said rights until just prior to the filing of this action.

"Plaintiff further alleges that at the time of entering into said agreement and of the execution of said deed of trust, she had no knowledge whatever of the value of said property, and no knowledge of the rental value thereof; that she had no knowledge of the extent of her own rights

therein, and that she relied wholly upon the information she received from defendant Dwight H. Miller, and her said father's attorney aforesaid; that she was led to believe and was so informed by said attorney employed by her father as aforesaid that said settlement and adjustment, as said agreement was purported to make, was the only and best settlement and adjustment that she could expect, and that it was all that she was entitled to; that all of said aforesaid information and statements plaintiff believed to be true, and she relied thereon absolutely in making and executing said agreement and said deed of trust; that said purported settlement and adjustment was greatly to the advantage of said Dwight H. Miller and greatly to the advantage of all other parties mentioned in said instruments with the exception of plaintiff and as to her, they have been greatly to her disadvantage, entirely without consideration and without any advantage to her.

"That notwithstanding the cruelty of her said husband toward her, plaintiff during all of the said times prior to her execution of said documents had trust and confidence in the business ability and legal knowledge of her said husband; that he had a dominating influence over her in all such matters; that because of her trust and confidence in his said knowledge of business and legal affairs she was led to believe that it was useless to secure independent advice of counsel regarding her rights in said property; that she did not know at any time what her rights therein were; . . . that . . . her belief in the truth of the representations and impressions aforesaid, continued after the execution of said instruments to exist down to and including about the month of November, 1918, when for the first time she was advised by counsel of the falsity of said beliefs, representations and impressions and particularly of the fact that her said husband had no right, title or interest in or to the aforesaid properties at the time of the making of said representations, and at the time she executed said agreement and deed of trust; that the confidence and trust reposed in her said husband as aforesaid . . . continued to exist . . . down to and including the said month of November, 1918, and that prior to said last-named time there was no act, matter or thing which occurred or happened coming to her knowledge, which

raised in her mind any suspicion that any of such representations were false as herein alleged, nor was there anything to cause her in the exercise of ordinary diligence to make inquiry respecting the same; . . . that immediately when first informed of the falsity of said representations, and particularly, of the fact that her said husband had no right, title or interest in or to said real property, she advised with counsel and . . . within —— months thereafter she brought this suit; yet prior thereto and immediately after learning of her said rights in the premises she notified in writing that she elected to and did rescind and terminate said purported agreement and deed of trust and at the same time demanded of them that they reconvey to her said property and deliver to her the possession of same; that said defendants, and each of them, have failed and refused to reconvey said properties or to deliver her possession thereof.''

The agreement referred to in the complaint was executed by Dwight H. Miller, as party of the first part, and the plaintiff, as party of the second part. It recites that ''the parties hereto are husband and wife, but are not living together as such, and desire to settle, adjust and determine their respective property rights and also the right to the custody of their child, Gustavus S. Miller.'' It provides that the property, alleged in the complaint to be the separate property of plaintiff, ''shall by proper deed of conveyance and assignment be assigned, transferred, conveyed and set over to Wallace A. Briggs and Henry T. May as trustees to hold, use and dispose of . . . as follows: At such time as in the judgment of said trustees may be proper to sell'' all of said property and ''to invest the proceeds realized from sale thereof in bonds or to loan the same upon first mortgage or trust deed and apply the interest and income therefrom to the support and maintenance of said party of the second part, or to pay over the same to her for her use, during the term of her natural life. . . . Until a sale shall be made of said real property, to receive the rents, income and profits thereof'' and ''to receive any and all dividends which may be declared or be payable on said shares of bank stock'' and to apply such receipts ''to the use of said party of the second part, or pay over the same to her.'' To expend ''from time to time for the support and maintenance, care and comfort

of said Celia Simmons Miller (the plaintiff herein) and in accordance with her station in life and in the manner in which she has heretofore lived, not only the income, interest and profits of the said property but so much and such parts of the principal thereof derived from sale of said trust property as may be necessary. . . . In the event that the expenditure of all of the interest and income, rents and profits of said trust property is not reasonably necessary for the support, maintenance, care and comfort of the said Celia Simmons Miller,'' then the excess to accumulate ''for the benefit of Gustavus S. Miller . . . during his minority'' and to be paid over to him ''upon his attaining majority.''

''Upon the death of said Celia Simmons Miller said trust shall cease and the title to the trust property shall vest in said Gustavus S. Miller . . . and the said trustees, or their successors in office, shall then pay over and deliver the trust property to him, or his assigns, provided, however, that if said Gustavus S. Miller shall die before the death of said Celia Simmons Miller and the said Celia Simmons Miller shall survive him, then subject to said trust she may dispose of said trust property by will and if she shall fail to dispose of the same by last will and testament then the title to said trust property on the death of said Celia Simmons Miller shall vest in her next of kin and heirs at law. The said party of the second part herein shall not have the power to dispose of her interest in said trust property during the term of her natural life or otherwise, than by last will and testament, and shall not have power to dispose of the same by last will and testament, if the said Gustavus S. Miller is living at the time of her death. It shall further be a part of the terms and conditions of said conveyance that the said Gustavus S. Miller shall not be permitted to dispose of his interest in said trust property or in the rents, profits and income thereof during the life of said Celia Simmons Miller. . . . Any moneys in bank standing in the name of the party of the second part are hereby declared to be her separate property and the party of the first part hereby grants to the party of the second part all his interest therein.

''It is further agreed that all property, real or personal, standing in the name of the party of the first part other than the properties specifically above described shall hence-

forth be and shall be considered and treated as his separate property and the party of the second part shall have no right or interest or ownership therein and the party of the second part hereby grants, bargains, sells and conveys to the party of the first part all her right, title, interest and ownership in and to all property standing in the name of the party of the first part. It is further agreed that the party of the first part herein shall hereafter have no right, title, ownership, claim or interest in or to the property, or any part thereof, which is to be conveyed as above stated 'to said trustees. It is further agreed that the party of the first part will from his own funds pay and discharge any street assessment which has been levied or which may within two years next after the date of this agreement be levied or assessed for the improvement of N street in front of said property No. 919 N street.

"It is further agreed that the party of the first part is entitled to and is hereby given the care, custody and control of Gustavus S. Miller, the son of the parties hereto, but with the right on the part of said son to visit the party of the second part at all reasonable and proper times and with the further right given to said son to visit the party of the second part and reside with her as long and as frequently as he may choose to do so during his school vacations each year. The party of the first part hereby obligates himself to support, maintain, educate and provide for said son in a suitable manner and hereby releases the party of the second part from all obligations so to do.

"Neither of the parties by this agreement waives, releases or relinquishes any cause of action for divorce which one may have against the other, but should any proceedings for divorce be brought at any time by either party against the other no counsel fees or alimony shall be allowed in such suit, it being understood that the provisions herein made as to the property rights of the parties hereto include all things of that character, but nothing in this agreement mentioned shall in any way constitute an understanding or agreement for a divorce or a consent thereto by either party hereto."

On the same day a deed of trust was executed by the parties to the agreement, conveying plaintiff's alleged separate property to the aforesaid trustees in accordance with the

terms of the agreement. The property remaining in the hands of the trustees at the commencement of the action was then of the value of something more than fifteen thousand dollars. The prayer is that the agreement and the deed of trust be declared invalid and the trustees required to surrender and deliver the property in their possession to the plaintiff.

The defendants demurred to the complaint on general grounds and on twenty-seven special grounds, including the statute of limitations and laches. Respondents state in their brief that the demurrer was sustained on the ground that it appeared on the face of the complaint that plaintiff's cause of action was barred. The action was commenced September 21, 1920. In their brief respondents argue many grounds of their demurrer in support of the judgment. It does not appear necessary to enter into a detailed discussion of all of such special grounds. Whatever imperfections there may be in the complaint, facts constituting a cause of action appear therein prominently and with reasonable certainty. **[1]** The plaintiff was acting under a misapprehension of the law relating to her property rights, of which her husband was then aware, and he not only failed to rectify the misapprehension, but, having himself created it by his own misconduct, he caused her to continue in her erroneous belief by further wrongful conduct on his part.

"The consent of the parties to a contract must be . . . free." (Civ. Code, sec. 1565.) "A consent which is not free is nevertheless not absolutely void, but may be rescinded by the parties, in the manner prescribed by the chapter on rescission." (Civ. Code, sec. 1566.) "An apparent consent is not real or free when obtained through . . . fraud . . . or mistake." (Civ. Code, sec. 1567.) "Mistake of law constitutes a mistake within the meaning of this article, only when it arises from . . . a misapprehension of the law by one party, of which the others are aware at the time of contracting, but which they do not rectify." (Civ. Code, sec. 1578.) The facts alleged clearly constitute a mistake under the foregoing provisions of the Civil Code. Such a mistake has been held a sufficient ground for setting aside a contract executed by persons between whom there existed no confidential relation. (*Hill* v. *Garvey,* 56 Cal. App. 98, 103 [205 Pac.

61].) **[2]** Contracts between husband and wife are "subject . . . to the general rules which control the actions of persons occupying confidential relations with each other, as defined by the title on trusts." (Civ. Code, sec. 158.) "A trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." (Civ. Code, sec. 2228.) "This relation and the obligation arising from it were not destroyed by the mere fact that an action for divorce was pending between them. They were still husband and wife, and so long as that relation existed between them, the law would not permit any inquiry into the extent of the trust and confidence which is presumed to be placed by one in the other; nor can the husband, by bringing an action for divorce against his wife, divest himself of the obligations which are imposed upon him by virtue of such relation." (*Dolliver* v. *Dolliver*, 94 Cal. 642, 647 [30 Pac. 4]. See, also, *Estate of Cover*, 188 Cal. 133 [204 Pac. 583]; *Hilton* v. *Hilton*, 54 Cal. App. 142, 155 [201 Pac. 337].)

A mere reading of the agreement shows that Dwight H. Miller obtained thereby an indefensible advantage over the plaintiff. **[3]** He gave up nothing and agreed to do nothing which he was not already legally bound to do, unless it be to pay "any street assessment which has been levied or which may within two years next after the date of this agreement be levied or assessed for the improvement of" the street in front of one of the lots conveyed to the trustees. On the other hand, the plaintiff surrendered all her interest in all property standing in the name of the husband; all dominion over her own separate property, except the right to dispose of it by will in the event of the prior death of her son; her right to counsel fees and alimony in the divorce proceeding then contemplated by her husband; and the right to the custody of her son or to his companionship, even, except at such times as he might elect to exercise "the right on the part of said son to visit" her and "reside with her as long and as frequently as he may choose to do so during his school vacations each year." The husband retained the right to do what he would with his own property, even to the extent of giving it all to a second wife or to an afterborn child, while the wife surrendered her right of giving

any of her property to an after-born child if the son survived her. In view of the confidential relation of husband and wife, such overreaching on the part of the husband is sufficient to raise an inference of undue influence, under the authorities cited.

[4] The allegation as to the notice of rescission is not as certain and clear as it might have been made. In *McNeese* v. *McNeese*, 190 Cal. 402, 405 [213 Pac. 36, 38], it is said: "It is not necessary that the notice to rescind shall be formal and explicit; it is sufficient that notice shall be given to the other party which clearly shows the intention of the person rescinding to consider the contract at an end. It has been held in other states that the mere bringing of an action is a sufficient disaffirmance of a sale."

[5] A party seeking to rescind must restore or offer to restore everything of value which he has received under the contract. Plaintiff made no offer to restore but she alleges that there was no consideration for the contract. If plaintiff received nothing under the contract, no offer of restoration was necessary. (*McNeese* v. *McNeese, supra.*) It does not appear whether the husband paid the street assessment pursuant to the agreement or whether he was under legal obligation to pay the same prior to the execution thereof. A fair inference from the facts alleged is that the rights which plaintiff surrendered to her husband, particularly her right to alimony, were of much greater value than the amount of the street assessment. [6] If an accounting is necessary to ascertain the amount, if any, to which the husband is entitled on account of payment of street assessments, then an offer of restoration is not required. (Black on Rescission and Cancellation, sec. 617.) The plaintiff alleges that the surrender of her property to the trustees has reduced her to the bare necessities of life and that, therefore, up to the time of the commencement of this action, she has been without means to enforce her rights. [7] It thus appears that she was without means to restore or repay anything expended for street improvements at the time of the notice of rescission. The husband, having by his wrongful conduct deprived the wife of the power to make restoration, cannot be heard to object that she has not done so. (Id., sec. 618. See, also, *Peterson* v. *Wagner,* 52 Cal. App. 1, 11

[198 Pac. 25] ; *Spencer* v. *Deems,* 43 Cal. App. 601, 605 [185 Pac. 671].)

[8] The action was commenced within three years after the discovery of the alleged fraud and mistake. It was necessary, in order to avoid the bar of the statute of limitations, for the complaint to show when the fraud or mistake was discovered, why it was not discovered sooner, and the circumstances under which it was discovered. ''The courts will not lightly seize upon some small circumstance to deny relief to a party plainly shown to have been actually defrauded against those who defrauded him on the ground, forsooth, that he did not discover the fact that he had been cheated as soon as he might have done. It is only where the party defrauded should plainly have discovered the fraud except for his own inexcusable inattention that he will be charged with a discovery in advance of actual knowledge on his part.'' (*Victor Oil Co.* v. *Drum,* 184 Cal. 226, 241 [193 Pac. 243, 249].) Applying the foregoing rule to the allegations of the complaint, the facts stated are amply sufficient to explain why plaintiff did not sooner discover the fraud and mistake. Having been convinced by the alleged statements and acts of her husband and his attorneys, as well as those of the attorney employed by her father, that the husband had, and by the agreement surrendered, a substantial interest in her separate property, it was most natural for her to continue in her erroneous belief until facts sufficient to put her upon inquiry came to her knowledge.

[9] The complaint alleges that the plaintiff gave prompt notice of rescission upon the discovery of the alleged fraud and mistake. Suit was not instituted until nearly two years thereafter. There is nothing in the complaint to indicate that the defendants suffered any prejudice by reason of the delay. ''Mere delay in bringing action for a time less than the period of limitation does not amount to laches. There must be also present the element that the delay has been to the prejudice of the opposite party.'' (*Victor Oil Co.* v. *Drum, supra,* p. 242.)

The first cause of action is merely a statement, in somewhat different language, of the facts alleged in the second, the relief sought under both being the same. No separate

discussion of the alleged first cause of action, therefore, is deemed necessary.

The judgment is reversed, with directions to the trial court to overrule the demurrer and give the defendants a reasonable time to answer.

Hart, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 28, 1924, and the following opinion then rendered thereon:

THE COURT.—[10] In their petition for a rehearing, respondents urge "the fact that Gustavus S. Miller was a minor when the documents in question were executed precludes rescission thereof." He was over twenty-five years of age when the fourth amended complaint was filed. It is not perceived, therefore, that he stands in any different position than would any other defendant who had innocently received a gift of property procured through the fraud of a third person. [11] The question is whether an innocent recipient of a gift procured to be made through another's fraud can set up his innocence as a defense to an action by the donor to rescind the gift on account of the fraud. No case has been cited or discovered in which such a defense has been upheld. The son has parted with nothing of value, nor do the contract and deed obligate him to do anything. In *Antoszewski* v. *City Plumbing Co.*, 185 Mich. 215 [151 N. W. 635], it was held that the plaintiff was entitled to the cancellation of a deed conveying property to a husband and wife, where the execution of the deed was induced by fraud of the husband, the wife not being a party to the fraud nor giving any consideration for the conveyance. In *Martin* v. *Evans*, 163 Ala. 657 [50 South. 997, 1000], third persons had fraudulently induced a mother to convey property to Martin, without consideration, in order to prevent the prosecution of her son for a crime; it was held that the mother was entitled to a decree canceling the deed. In that case, however, it appears that Martin was not wholly without fault. Dwight H. Miller was acting for his son in procuring the conveyance, though without having been appointed the agent of the latter. By now retaining the property ac-

69 Cal. App.—30

quired through the fraudulent transaction, the son ratifies his father's agency in procuring it and holds it subject to all the infirmities of title which resulted from his father's conduct. "He who takes the benefit must bear the burden." (Civ. Code, sec. 3521.)

Respondents ask that the following language be stricken from the opinion: "A mere reading of the agreement shows that Dwight H. Miller obtained thereby an indefensible advantage over the plaintiff," on the ground that "allegations do not prove themselves." **[12]** It was not deemed necessary to restate the oft-repeated rule that a demurrer admits the allegations of a complaint and must be decided upon the assumption that such allegations are absolutely true. If the property rights of the parties are as alleged in the complaint and the agreement is correctly set forth therein, then the statement in the opinion of which complaint is made is strictly accurate. It seems needless to add that the court does not assume, except for the purposes of the demurrer, whether the facts alleged are true or not.

The petition is denied.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 26, 1924.

All the Justices present concurred.